# Irving Isador, trading as Irving Isador & Company, Appellant, v. Joseph Harris, Appellee.

## Gen. No. 25,086.

1. ALTERATION OF INSTRUMENTS, § 20*—*when plaintiff in action on altered note may show ignorance of alteration.* Where, in an action to recover against an indorser on a promissory note, plaintiff's statement of claim sets up that defendant executed the guaranty of payment of the note appearing above his indorsement and defendant avers, among other defenses, in his affidavit of merits that the guaranty was placed above his signature after the execution and delivery of the note and without his knowledge and consent and constituted a material alteration which released him from liability, and plaintiff files an amended statement of claim based upon defendant's liability as indorser and not as guarantor, on which the case is tried and under which plaintiff makes out a prima facie case, and plaintiff, on the trial, admits that the guaranty was placed on the note after its execution and delivery, as shown by defendant's evidence, it is error to refuse to permit plaintiff to introduce evidence to show that he was not aware of the averments in the statement of claim, that he did not know that the guaranty had been placed on the note until the case came to trial and that the guaranty was placed thereon without his knowledge or consent.

2. ALTERATION OF INSTRUMENTS, § 14*—*when recovery not barred by alteration.* The insertion of a guaranty above an indorser's name by an employee of the bank with which the payee had placed the note for collection, such guaranty being added without the payee's knowledge or consent, is not such an alteration as will relieve the indorser from liability as such, notwithstanding the statement of claim, prepared by his attorney without plaintiff's having seen it or knowing its contents, set up the guaranty, where the amended statement on which the case is tried bases defendant's liability on his indorsement and not on the guaranty.

3. PRINCIPAL AND AGENT, § 185*—*what essential to show ratification.* A knowledge of the principal of all of the material facts and action in the light of such knowledge are essential to bind a principal on the theory that he has ratified, assented to or acquiesced in the act of his agent.

Appeal from the Municipal Court of Chicago; the Hon. HOWARD HAYES, Judge, presiding. Heard in the Branch Appellate Court

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

at the March term, 1919. Reversed and remanded. Opinion filed March 9, 1920. Rehearing denied March 22, 1920.

FRANK SCHOENFELD, for appellant.

COOKE, SULLIVAN & RICKS, for appellee; EDWIN HEDRICK and HOMER D. DINES, of counsel.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

In an action (as amended by plaintiff's amended statement of claim) against the indorser on a promissory note for $2,000, the court instructed the jury to return a verdict finding the issues against the plaintiff. The jury returned such a verdict and the court entered judgment on the verdict and plaintiff appealed.

In plaintiff's original statement of claim, filed October 31, 1918, it is averred that on May 1, 1918, Joe Harris executed and delivered to plaintiff a promissory note, as follows:

"$2000.00                     Chicago, Ills., May 1st, 1918.

90 days after date I promise to pay to the order of Irving Isador & Co., Two Thousand - - 00/100 Dollars, at 509 S. Franklin St. Chicago, Ill. Value received with interest at the rate of 6 per cent per annum.

Joe Harris."

that defendant guaranteed the payment of said note by a written guarantee indorsed thereon as follows:

"For value received, I hereby guarantee the payment of this note and all expenses of collecting the same, includings attorneys' fees, and waive protest and notice of non-payment and diligence in collecting the same, and consent that security may be taken or the time of payment be extended without impairing this guarantee.

Joseph Harris."

and that there is owing to plaintiff the sum of $2,000, together with interest at 6 per cent per annum, and reasonable attorney's fees.

Joe Harris, the maker of the note, and Joseph Harris, the defendant, are different persons.

Defendant filed an affidavit of merits and demanded a jury trial. Later he filed an amended affidavit of merits in which he averred in substance, among other things, (1) that the supposed note, and his supposed indorsement thereon, were made without any good and valuable consideration; (2) that the execution and indorsement of the note were obtained by fraud; (3) that there was a material alteration of the note after its delivery to plaintiff, in that, the words of guaranty on the back of the note, above defendant's signature, were not thereon when the same was delivered to plaintiff, and had been subsequently placed thereon without the knowledge or consent of defendant, and that he had never so guaranteed the note; and (4) that no notice of dishonor or nonpayment by the maker had ever been given by plaintiff to defendant as required by the statute.

Subsequently, on February 7, 1919, when the case was about to be called for trial, plaintiff obtained leave to file instanter, and filed an amended statement of claim, and it was ordered that defendant's amended affidavit of merits stand thereto. In plaintiff's amended statement of claim he sets forth *in hæc verba* the said note, and avers, in substance, that on the back thereof there appears said words of guaranty above the signature of the defendant; that on July 30, 1918, the day of the maturity of the note, plaintiff caused demand for payment to be made on the maker, that the maker did not pay the same, and that thereupon on July 31, 1918, plaintiff gave to defendant notice of the dishonor of the note pursuant to the statute.

On the trial plaintiff produced the note in question and the same was admitted in evidence. The words of guaranty were printed, evidently by the use of a rubber stamp, above the signature of the defendant on the back of the note. It was disclosed by plaintiff's wit-

nesses that the note, prior to its maturity, was placed for collection with a certain Chicago bank, as plaintiff's agent; that a messenger of the bank duly presented the note for payment to the maker, Joe Harris, on July 30, 1918, the day of the maturity of the note, and that the maker did not pay the note; that on the morning of July 31, 1918, plaintiff received notice from the bank that the note had not been paid; that he immediately procured possession of the note and on the same day caused notice of the nonpayment of the same by the maker to be given to defendant. Plaintiff then rested his case.

The defendant then called a witness for the purpose of showing that the words of guaranty, which appeared over the signature of defendant on the back of the note, were not thereon printed or written when the note was originally delivered to plaintiff. Plaintiff's attorney then admitted that such was the fact. Defendant then rested his case and moved for a directed verdict in his favor. Plaintiff's attorney then offered to introduce certain testimony in rebuttal and stated, in substance, that he proposed to show that said words of guaranty on the back of said note were placed thereon by some employee of said Chicago bank without plaintiff's knowledge, consent or authority, *after* plaintiff had placed the note with said bank for collection; that when the note was returned to plaintiff by said bank on July 31, 1918, he gave the note to his attorney for recovery of the amount due; that plaintiff never read, or was informed of, any of the pleadings filed in this cause, which were prepared by his attorney; that the first information that plaintiff had that said words of guaranty were on the note was when the note was exhibited to him on the trial; and that plaintiff never at any time authorized, acquiesced in, or approved of, the putting of said words of guaranty on the back of said note. The court refused to allow plaintiff to make proof of these facts, saying: ''The

filing of this suit and the action taken by plaintiff constitutes a ratification in all respects of the act of the bank.'' The court thereupon instructed the jury to return a verdict finding the issues against the plaintiff, and the judgment appealed from followed.

We are of the opinion that the court erred in refusing to allow plaintiff to make proof of the facts above mentioned and in instructing the jury to find the issues against the plaintiff. Plaintiff's statement of claim, as amended, and upon which the case was tried, was based upon the liability of defendant as an indorser, and not upon his liability as a guarantor. And plaintiff's evidence made out a good prima facie case of liability on the part of defendant as an indorser.

In 2 Am. & Eng. Encyc. of Law (2nd Ed.), p. 216, it is said: ''In the United States the effect of an alteration by an agent is dependent on whether the act is or is not within his express or implied authority. If the agent acts within the line of his authority in making the alteration; it will have the same effect in invalidating the instrument as if made by the party claiming thereunder himself. But if, on the other hand, the agent has no authority whatever, either express or implied, to make the alteration, it is simply a spoliation by a stranger to the contract, and does not impair the validity of the instrument as it originally stood.'' In *Bledsoe v. Graves,* 5 Ill. 383, 385, a case where an erasure of the indorsement of a promissory note had been made without the knowledge or consent of the holder, it is said: ''The erasure being made by a third person, without the knowledge of the plaintiff, could affect the rights of neither party, any more than if it had been occasioned by accident. Had such been the case, it would hardly be denied, that the party might explain the circumstance by proof, and thus give effect to the real undertaking of the party. Had the plaintiff made or procured the alteration, with a fraudulent intent, the case would have been

sufficient.   As it was, the original contract between
the parties still subsisted, and when that was ascer-
tained, it was proper for the court to let it go to the
jury.'' In *Catlin Coal Co. v. Lloyd,* 180 Ill. 398, 405,
it is said: ''The mere fact of an interlineation or an
erasure appearing in an instrument does not, of itself,
raise any presumption of law either for or against
the validity of the writing, but that the question when,
by whom and with what intent it was made is one of
fact to be submitted to the jury.'' In *Fry v. Jenkins,*
173 Ill. App. 486, one Gilbert, the attorney of plain-
tiff, without the knowledge or direction of plaintiff,
changed the date of a note and mortgage to conform
with the date of another note and mortgage for which
they were substituted.   It was contended that the filing
of a bill to foreclose the mortgage was a ratification
by plaintiff of the act of his agent, but the Appellate
Court of the Fourth District held otherwise, saying
(p. 489):

''The alteration of the note was a material one under
section 124 of article 8 of the Act of 1907, entitled
'Negotiable Instruments,' but Gilbert had no authority
to alter it and even if such act of alteration could be
ratified (being in violation of a statute) there is no
evidence of any ratification by appellant of the act of
Gilbert in altering the date.   It is contended that
the filing of the bill to foreclose was in some way a
ratification.   On the contrary the bill set forth to the
court all the facts and circumstances of the alteration,
and while it specifically prayed a correction of a mis-
take and a foreclosure of the mortgage or in the alter-
native of the original mortgage, this was no ratifica-
tion of Gilbert's act in making the alteration.   We
are unable to see how the circumstances shown in evi-
dence can deprive appellant of his lien.   What act has
he committed that it should operate to take away his
right to enforce the lien of his mortgage?   He has been
guilty of no fraud or attempt to defraud the mortgagor.
Even if the act of Gilbert could be said to operate as

a fraud upon the mortgagor which was not intended, appellant is not to lose his lien for the act of Gilbert with which he had nothing to do, which was not within the scope of Gilbert's authority as his attorney, and of which he has sought no undue advantage.''

In 21 Ruling Case Law, p. 928, it is said: "In order to bind a principal by ratification, assent, or acquiescence in prior acts of his agent in excess of authority actually given, a knowledge of the material facts must be brought home to him. He must have been in possession of all of the facts and must have acted in the light of such knowledge." (See also, *Coleman v. Connolly*, 242 Ill. 574, 583; *Cadwell v. Meek*, 17 Ill. 220, 227.)

For the reasons indicated the judgment of the municipal court is reversed and the cause is remanded.

*Reversed and remanded.*

MR. PRESIDING JUSTICE MATCHETT and MR. JUSTICE BARNES concur.