## LEWIS *v.* INGERSOLL.

### September, 1864.

A mortgage debtor paid a sum of money to the son of the mortgagees' agent, to be applied on the mortgage. The agent had authority to receive money for the mortgagees, and the son had for a number of years acted as his clerk or servant in the business of the agency, and had sometimes carried money collected to the mortgagees, but had no authority as their agent.

*Held,* that the debtor's payment to him was not a payment to the mortgagees' agent; and that the promise of the agent that he would allow such payment, was not binding on the mortgagees.[*]

An agent, not having express power to delegate his authority, cannot delegate the power to receive money, for this involves discretion or trust.

Creditors resident in Pennsylvania, where the limit of interest is six per

---

[*] Compare Fellows *v.* Northrup, 39 *N. Y.* 117.

Lewis v. Ingersoll.

cent., holding a mortgage made in this State, on lands in this State, may receive seven per cent. thereon, if there be nothing to indicate where the securities where payable, nor that a different rate of interest than that allowed by the laws of this State was intended.*

Letters written by a witness are admissible as auxiliary to his testimony, and as memoranda made by him, if he testifies that though he had forgotten the facts therein stated, the statements were undoubtedly true at the time they were written.†

Hazard Lewis (for whom, on his death pending the action, his executors, Frederick L. Lewis, Horace S. Griswold and Clinton T. Page, were substituted as plaintiffs), brought this action, in the supreme court, against Joseph S. Ingersoll and John C. Miller, trustees of the estate of William Bingham, deceased, to have a bond and mortgage adjudged paid and satisfied, and to have the mortgage satisfied of record. The defendants claimed that a sum remained due thereon.

The mortgage had been made by John A. Collier and Christopher Eldredge, under whom the plaintiffs claimed, to the defendants, as trustees of the Bingham estate; and the whole amount due on it had been paid, except the interest due thereon June 1, 1830, which amounted on that day to three hundred and twenty-six dollars and fifty-three cents. On November 29, 1830, when the mortgaged premises were owned by Virgil Whitney and David C. Case, as tenants in common, the latter

---

* Compare, as to usury cases, Cope v. Wheeler, 41 *N. Y.* 303 ; affirming Cope v. Alden, 53 *Barb.* 350 ; Lee v. Selleck, 33 *N. Y.* 615, affirming 32 *Barb.* 522 ; Artizans' Bank v. Park Bank, 41 *Barb.* 599 ; Jewell v. Wright, 30 *N. Y.* 259 ; and see that case commented on in Bowen v. Bradley, 9 *Abb. Pr. N. S.* 395, and see p. 400, where the dissenting opinion of DAVIES, J., will be found. As to the question, what is "the place of making the contract," in such cases, compare Davis v. Coleman, 11 *Ired.* (*N. C.*) 303 ; *Forsyth Cas. & Op. in Const. L.* 244 ; Young v. Harris. 14 *B. Monr.* 559 ; Pine v. Smith, 11 *Gray*, 38 ; Lenning v. Ralston. 23 *Penn.* 137 ; Steadman v. Duhamel, 1 *Com. B.* 888 ; 1 *Pars. on B. & N.* 57 ; Parker v. Royal Exch. Ins. Co. 8 *Sess. Cas.* 2nd series, 372 ; Wright v. Ins. Companies, 6 *Am. Law R.* 489 ; Pomeroy· v. Manhattan Ins. Co., 40 *Ill.* 398 ; Heebner v. Eagle Ins. Co., 10 *Gray*, 131 ; Daniels v. Hudson River Ins. Co., 12 *Cush.* 422 ; Huth v. N. Y. Mut. Ins. Co., 8 *Bosw.* 551.

† See also Marcly v. Shultz, 29 *N. Y.* 346 ; and Philbin v. Patrick, and Martin v. Cope, in this vol.

paid to the former three hundred and twenty-six dollars, as and for the interest which became due on June 1, preceding.

The Virgil Whitney above mentioned was the son of Joshua Whitney, of Binghamton, who was, from 1824 to 1845, the general agent there, of the trustees of the Bingham estate, who, during all this time, resided in Philadelphia. From about 1829 to 1835, Virgil Whitney acted, from time to time, as a clerk or servant of his father, Joshua Whitney, in correspondence, drawing contracts, deeds, bonds and mortgages, and in receiving money for the trustees, but the judge found as a fact that he was never an agent, clerk, or servant of the trustees, and never acted as such. From 1825 to 1836, Virgil Whitney had been in the habit of receiving money from time to time of persons who owed the trustees on contracts, bonds, and mortgages, and generally carried the money for such persons to Philadelphia, and there paid the same for them to the trustees. He was never authorized by the trustees to receive money for them, and what money he received for them at any time, was taken by him either as a clerk or servant of his father, or for the accommodation of the persons from whom he received the same.

Virgil Whitney never paid the three hundred and twenty-six dollars, received of Case, to the trustees or to Joshua Whitney, nor accounted therefor to any person. Joshua Whitney never had possession of the bond and mortgage in question, and he never received any payment thereon from any one; but all the payments made thereon, other than the one now in controversy, were made to the trustees personally, at Philadelphia.

In 1835 or 1836, and prior to February 8, 1836, Joshua Whitney, in a conversation with the plaintiff, in reference to a purchase by the latter of the interest of Virgil in the mortgaged premises, promised the plaintiff that he (Joshua) would assume and allow the three hundred and twenty-six dollars, paid by Case to Virgil, as a valid payment to the trustees, on the mortgage; and afterward, on February 8, 1836, the plaintiff purchased of Virgil Whitney his interest in the premises, for a valuable consideration. Joshua Whitney had no authority from the trustees to make such a promise, and never allowed such sum as a payment, and never charged himself with it in

account with the trustees. Virgil Whitney was never held out by Joshua Whitney as an agent of the trustees; and Joshua had no authority, express or implied, to authorize Virgil to receive money for them, so as to charge them therefor, while in the hands of Virgil. Prior to the year 1835, Joshua Whitney did not know of the payment by Case to Virgil Whitney.

Some exceptions were taken to the admission of evidence, the facts necessary to understand which are given in the opinion.

*The judge* before whom the cause was tried found the foregoing facts, and adjudged that the defendants were not bound by the payment made by Case to Virgil, and gave judgment for the defendants for the amount claimed.

From this judgment the defendant appealed to the court at general term, where the judgment of the court below was affirmed; and the plaintiff appealed to this court.

*D. S. Dickinson*, for plaintiffs, appellants;—As to the agency, cited Bridenbecker *v.* Lovell, 32 *Barb.* 18; Johnson *v.* Jones, 4 *Barb.* 369; Perkins *v.* Washington Ins. Co., 4 *Cow.* 645; Williams *v.* Getty, 7 *Casey*, 461; Munn *v.* Commission Co., 15 *Johns.* 48; Com. Bank of Erie *v.* Norton, 1 *Hill*, 501. As to estoppel,' Lawrence *v.* Brown, 5 *N. Y.* 401; 2 *Greenl. on Ev.* §§ 65–67; Com. Bank of Buffalo *v.* Warren, 15 *N. Y.* 577; *Story on Ag.* § 244; Newton *v.* Bronson, 13 *N. Y.* 694.

*Hotchkiss & Seymour*, for defendants, respondents.

BY THE COURT.—T. A. JOHNSON, J.—Upon the facts established by the findings of the court, it is impossible for the plaintiff to maintain this action. It is unnecessary to repeat here that this court will not review the case upon the exceptions to findings of fact, or the omission to find other facts not found. This has been so often and so uniformly asserted as the rule, that the occasion for re-asserting it ought no longer to be presented and passed upon by us.

The three hundred and twenty-six dollars claimed to have been paid upon the bond and mortgage, were never received either by the defendants personally, or by their agent, Joshua

Whitney. The bond and mortgage were never in the possession of the agent, but were always in the hands of the defendants, who received personally, or at their office in Philadelphia, all the moneys ever paid thereon.

There is no dispute as to the fact that the amount in question was paid by Case, then a part owner of the premises, to his co-tenant Virgil Whitney, for the purpose of having it applied upon the bond and mortgage, nor that it was received by Virgil Whitney to be so applied. But the application never having been in fact made, nor the money handed over, by Virgil, either to Joshua Whitney, the agent, or to the defendants, the question is whether the law will make the application. It is clear that this money, while it remained in the hands of Virgil Whitney, could be no payment, unless he was authorized by the defendants to receive the same for them on that account, or they have in some way agreed to apply it since it was so received. The fact is distinctly found that Virgil was never authorized by the defendants to receive any money for them as their agent; and Joshua Whitney has only agreed that the amount so paid should be applied. It is quite certain, therefore, that the mere payment of the money to Virgil Whitney, was in law no payment or satisfaction of the debt for that amount.

In respect to the promise of Joshua Whitney that this amount thus in the hands of Virgil he would assume and allow as a good and valid payment to the defendants, the fact is established that he did make such promise, but the further fact is also found that he had no authority from the defendants to make any such promise on their behalf, and that he never did allow it, or account to the defendant for the money, or any part thereof. The promise was but the individual promise of Joshua Whitney, and in no respect the promise of the defendants, nor binding upon them.

The position assumed and made with so much earnestness and apparent confidence by the plaintiff's counsel, that the payment of this three hundred and twenty-six dollars to Virgil Whitney was, upon the facts found, in legal effect a payment to Joshua Whitney, the agent, and so a payment to defendants, cannot be maintained. The finding in this respect

is, that Virgil, for the period of about nine years, acted from time to time as clerk or servant of Joshua, his father, who was the agent, in correspondence, drawing deeds, bonds and mortgages, and receiving money for the defendants, but was never an agent, clerk or servant of the defendants, and never acted as such. As to the defendants, therefore, Virgil Whitney was a mere stranger, and they were no more bound by payments to him than by payments to any other person. He acted from time to time, not uniformly or constantly, as the clerk or servant of the agent. He was the clerk or servant or agent of the agent, but not of the principals. The principal is bound by the authorized acts of his agent. Such acts are his acts, and it is upon that principle alone that he is bound. But when the agent undertakes to act or do his businss by or through another, the acts of such other are not the acts of the principal, unless the agent had authority to employ or appoint others, Acts merely mechanical an agent may employ others to perform, having first determined that such are necessary or proper to be performed. But not so with acts involving the exercise of a discretion, or anything of the character of a trust which is in its nature personal to an agent. In such cases the agent has no right to turn the principal over to another of whom he knows nothing. 2 *Kent Com.* 633 ; Commercial Bank of Lake Erie *v.* Norton, 1 *Hill,* 501. The maxim is, *delegatus non potest delegare.* The authority to an agent from a principal to receive money is most clearly a personal trust and confidence which cannot be delegated without certain and plain authority. It does not help the plaintiffs' case that Virgil Whitney sometimes took money from settlers or purchasers as their agent, to carry and pay to the defendants at Philadelphia. It is clear, therefore, that this money paid to Virgil, which never came to the defendants' hands nor to the hands of their authorized agent, was not in law a payment upon the bond and mortgage. The promise of Joshua Whitney, that he would assume the payment to Virgil and allow it, does not estop the defendants from insisting that the payment was never made. Granting even that the plaintiffs' testator purchased in consequence of that promise, which does not appear, it would not so operate. He

could not estop his principals from insisting upon what was true by any act or promise outside of his authority.

Interest at the rate of seven per cent. was properly allowed. The lands were situated in Broome county in this State, and the securities were there executed. There is nothing to indicate that a rate of interest different from that allowed by the laws of this State was intended by the parties. In such a case the law of the place where the contract is made governs as to the rate of interest. 3 *Kent Com.* 450, 3 ed.; *Story on Confl. of L.* § 296. There is no question of any usurious intent in the case to affect the application of this general rule. It does not appear from the case where those securities were made payable. It is plain, however, that they were New York and not Pennsylvania contracts.

The only remaining question on the case is whether the letters of Eldredge to Miller of September 30, 1834, and of February 7, 1838, and the letter and statement of the amount due upon the bond and mortgage of August 20, 1834, to Eldredge and Collier, were admissible in evidence, against the plaintiffs' objections. Collier and Eldredge were the obligors and mortgagors, and were seized in fee of the premises. The plaintiff Lewis derived title immediately from them, and of course claimed under or through them, subject to this mortgage debt. The land in his hands was bound for whatever amount remained due and unpaid on the bond and mortgage. The question at issue, to be tried, was, whether the debt had been paid. The plaintiff affirmed that it had been; and the burden of proving the fact rested upon him. These letters and statements were a part of the defendants' evidence to show that the payment claimed by the evidence to have been made had never been made. There was no question between the parties as to anything except this item of three hundred and twenty-six dollars. Had these letters been offered as the mere declarations or statements of Eldredge, independently of his oral evidence, and as a substitute for it, they would, I am inclined to think, have been inadmissible as evidence, as being the declaration of a former owner of the land and the principal debtor, against a subsequent purchaser for value subject to the indebtedness. But they were not so offered and received. They were produced and identified by

the witness Eldredge on his cross-examination. He had forgotten the facts therein stated, but was able to say in substance that the letters were undoubtedly true at the time they were written, although he was then unable to remember them. Under these circumstances it seems to me the papers were admissible as auxiliary to the testimony of Eldredge, and as memorandums made by him, of a then existing state of facts, within the cases of Halsey *v.* Sinsebaugh, 15 *N. Y.* 485; Russell *v.* Hudson River R. R. Co., 17 *Id.* 134, 136; Guy *v.* Mead, 22 *Id.* 462. But in any event it is difficult to see how the admission of these papers could have worked any possible injury to the plaintiff. There was no dispute that the amount claimed as a payment was paid to Virgil Whitney, and unless it was paid over by him to the defendants or their agents, it could not operate as a payment. Aside from that amount in the hand of Virgil Whitney, there was no pretense that the debt had been paid. The plaintiff was able to show this money paid to Virgil, but nothing further. He did not, therefore, made out any case, even *prima facie,* and the defendants were clearly entitled to judgment, irrespective wholly of the evidence furnished by these letters. They do not affect the question of the authority of Virgil Whitney to receive the money for the defendants in any way, and clearly were not introduced or used for that purpose. I am of the opinion, therefore, that the judgment is right, and should be affirmed.

All the judges concurred, except H. R. SELDEN, J., who was absent.

Judgment affirmed, with costs.