In the Matter of the Estate of ALEXANDER S. KIRKMAN, Deceased.

Surrogate's Court, Kings County, April 5, 1932.

*Blake & Voorhees* [*Charles A. Kelby* and *Clinton H. Blake* of counsel], for the petitioners.

*Middlebrook & Sincerbeaux,* for the respondent Sidney K. Kirkman.

WINGATE, S. This proceeding arises upon a. petition by two of three trustees of a certain trust erected by the will of this testator for a direction by the court that their cotrustee unite with them in voting the stock of a certain corporation constituting the trust *res* in the manner which they desire, or, in the alternative, that he be removed from office. All of the beneficiaries of the trust other than the respondent join in the petition. The answer alleges that the petition does not state legal grounds for the granting of its prayer and that, even if it did, the court would have no jurisdiction to award the relief sought. It asks the dismissal of the petition or, if the court determines adversely to the contentions of the respondent, that an opportunity be granted to file an additional or amended answer raising issues of fact respecting the matters alleged.

Upon the argument it was conceded that this answer was in substance a motion to dismiss the petition with like effect as a demurrer under the old practice.

Under such circumstances it is well established that the result of the respondent's pleading is that " it admitted all the facts alleged and such inferences as could be fairly drawn from them. * * * But it admitted none of the conclusions averred, nor any construction put upon " the subject-matter " by the pleader. Nor did it admit the correctness of any inference drawn by the pleader from the facts alleged." (*Greeff* v. *Equitable Life Assurance Society,* 160 N. Y. 19, 29.)

" In such a case the demurrer cannot be sustained unless it appears, admitting all the facts alleged, that no cause of action whatever is stated. The demurrer cannot be sustained simply by showing that facts are imperfectly or informally averred, or that the pleading lacks definiteness and precision, or that material facts are only argumentatively averred. The pleading may be deficient

in technical language or in logical statement, but, as against a demurrer or a motion of this character at the trial, the pleading will be deemed to allege whatever can be implied from its statements by fair and reasonable intendment." (*Kain* v. *Larkin*, 141 N. Y. 144, 150.)

That the same rules are applicable upon a motion for judgment on the pleadings as on a demurrer, is demonstrated by the language of the court in *Gilbert Paper Company* v. *Prankard* (204 App. Div. 83, 84).

The facts thus demonstrated for present purposes are as follows: Alexander S. Kirkman, the decedent, died on February 9, 1912. His will was admitted to probate in this court. By its terms he erected the remainder of his estate into a trust, the income of which was to be paid to his wife, Esther F. Kirkman, for life, with the principal fund, on her death, divisible into four parts. The first three of these parts were of five-sixteenths each, two of them being payable to the testator's sons, Sidney and Ralph, absolutely, and the third, to his daughter, Ethel, upon her attaining the age of forty, which event has already occurred. The final one-sixteenth of the corpus was to be held in trust for his granddaughter, Dorothy, until she attained the age of forty years, whereupon it, also, was to be paid over. She is now thirty-eight years of age. The widow is still alive.

Three trustees were named in the will, one of them being testator's son Sidney. The other two also qualified, but died prior to the year 1930, whereupon two of testator's other children, Ralph and Ethel, were named and qualified in their places.

Prior to 1930 testator's business was conducted by the trustees under the corporate title of Kirkman & Son. In that year the physical assets of the corporation, other than certain moneys and securities, were sold to the Colgate-Palmolive-Peet Company, for the sum of $3,000,000 in cash and $2,500,000 in the stock of a subsidiary. This stock was subsequently exchanged for stock of the purchaser, and is presently held by Kirkman & Son Corporation, a Delaware corporation, the stock of which is wholly owned by the New York corporation, the corporate title of which has been changed to Kirkman Holding Corporation. The only property directly held by the trustees of the estate is certain shares of the stock of Kirkman Holding Corporation. The assets of this corporation are, *first*, securities purchased with the $3,000,000 paid as purchase price of the physical assets of the business by the Colgate-Palmolive-Peet Company; *second*, other securities purchased with the assets of the corporation not sold to the Colgate Company amounting to $670,000, and *third*, all of the capital stock of Kirkman & Son Corporation,

the Delaware corporation, which, in turn, owns the $2,500,000 par value of stock of the Colgate Company. The Kirkman Holding Corporation has an authorized capital of 15,000 shares, of which the trustees of the estate hold 11,071. It is alleged that testator's son Sidney, who, as noted, is one of the trustees, individually owns or controls the balance of the shares of the Kirkman Holding Corporation, numbering 3,929.

The fifth paragraph of the petition reads in part as follows: " * * * that the principal functions of the trustees thereafter became and now are the investment of said Three million dollars cash payment, and of securities and cash additional aggregating in value $670,000 which were retained by said corporation controlled by said trustees and not included in said sale, in a suitable form for the protection of the beneficiaries of the said trust, and the supervision and control of the entire investment above referred to, all of which the trustees continued to do through the corporations above referred to, namely, Kirkman Holding Corporation [which is the same corporation as said Kirkman & Son, the New York corporation, with a changed corporate name] and Kirkman & Son Corporation, a Delaware corporation, all of the capital stock of which is held and owned by said Kirkman Holding Corporation; that said preferred stock of Colgate-Palmolive-Peet Company is held by said Kirkman & Son Corporation, and the investments representing the said $3,000,000 cash payment and said $670,000 additional assets are owned and held by said Kirkman Holding Corporation."

The officers of Kirkman Holding Corporation are Sidney A. Kirkman, president; Thomas M. Gurney, first vice-president and treasurer; Ralph Kirkman, second vice-president and secretary, and Kate R. Simons, assistant secretary. The difference of opinion which has arisen between Ethel Kirkman Gurney and Ralph Kirkman on the one hand, and Sidney Kirkman on the other, relates to the voting of the stock held by the trustees for officers and directors of the Kirkman Holding Corporation. The two first named trustees desire the re-election of Thomas M. Gurney and the elimination of Kate R. Simons. They state, however, that they are willing to re-elect the existing officers.

The allegations of the petition which the court deems material on this application respecting the attitude of Sidney A. Kirkman on this subject are as follows: " That Sidney A. Kirkman, however, refused to join with said other trustees in voting the said stock of the Kirkman Holding Corporation held by said trust, and refused to join with them in voting the said stock for any board of directors other than a board of directors controlled by him.

" That the refusal of said Sidney A. Kirkman to join with his said cotrustees in voting the said trust stock for the re-election of said present board of directors is an attempt by him to take advantage of the fact that the death of Alexander S. Kirkman took place prior to May 6, 1918 and, by resort to Section 48 of the Stock Corporation Law and to Section 22 and Section 23 of the General Corporation Law, to carry out his plan and intention of securing for himself alone the control of said trust and the direction of said corporation by disfranchising the stock held by said trustees and thereby placing the control of said Kirkman Holding Corporation in the hands of minority stock which he personally either owns or controls."

It further appears from the tenth paragraph of the petition that Sidney A. Kirkman has been in receipt of a salary of $10,000 a year as president of the Kirkman Holding Corporation.

Section 48 of the Stock Corporation Law provides that where fiduciaries disagree respecting the voting of stock held by them, a majority may exercise the vote on behalf of all, but it is expressly stated therein that this shall not apply to testamentary fiduciaries created by will of a decedent who died prior to May 6, 1918.

Sections 22 and 23 of the General Corporation Law provide that where directors of a corporation have not been elected at a meeting called for that purpose, a special meeting may be called in the manner therein provided and that the stockholders attending such special meeting shall constitute a quorum qualified to elect directors.

It has been made to appear by the petition that such original stockholders' meeting has been held, and by reason of the failure of a quorum, due to Sidney's refusal to join with his cotrustees in voting the stock held by them jointly, that such meeting was adjourned without date. Wherefore, it is legally possible for Sidney, on the facts alleged in the petition, to call a special meeting pursuant to the provisions of section 22 of the General Corporation Law and by a continuance of his refusal to join with his cotrustees in the voting of preponderant majority of the stock of the corporation held by them, to wholly disfranchise the stock of the trusts and elect all of the directors of the corporation by the vote of the minority stock which he personally owns and controls.

That such procedure on his part would be contrary to a basic policy of the law is self-evident. It is primary that, except as expressly otherwise provided by statute or in the will, all trustees should act as a unit and a majority cannot validly exclude a minority from participation in the functions of the office. (*Ridgeley* v. *Johnson*, 11 Barb. 527, 535; *Cooper* v. *Illinois Central R. R. Co.*, 38

App. Div. 22, 28.) It would, therefore, follow as an *a fortiori* matter that a single trustee cannot legally arrogate to himself the right to exclude a majority from the management of the trust estate.

It seems reasonably apparent that the difficulties with which the present litigants are confronted arose by reason of the extra legal, if not positively illegal, manner in which they have conducted the affairs of the trust since the sale to the Colgate-Palmolive-Peet Company of the business for which the corporation was organized. It is the duty of trustees themselves to invest trust funds and to exercise acts of judgment and discretion in connection with such matters (*Cooper* v. *Illinois Central R. R. Co.*, 38 App. Div. 22, 29), and the act of these trustees amounting, in effect, to the delegating of these duties to others constituting the board of directors of the corporation whose composition consists of outsiders not appointed by or responsible to the court, equal in number to the trustees on the board, is an action which the law will not countenance. (*King* v. *Talbot*, 40 N. Y. 76, 86, 88; *Smith* v. *Central Trust Co.*, 12 App. Div. 278, 282; affd., 154 N. Y. 333; *Suarez* v. *Pumpelly*, 2 Sandf. Ch. 336, 340; *Lyon* v. *Jerome*, 26 Wend. 485, 494; *Lewis* v. *Ingersoll*, 3 Abb. Ct. App. Dec. 55, 60.) The maxim *delegatus non potest delegare* is as old as the Year Books.

Further than this, however, it appears that for the performance of his duties as president of this corporation, the sole function of which, according to the allegations of the petition, is the holding and investment of the trust funds, the respondent, Sidney A. Kirkman, has been in receipt of a salary of $10,000 a year. The only compensation payable to trustees under the law for their acts as such is commissions at the rate provided in section 285 of the Surrogate's Court Act, as and when allowed by the surrogate or in the manner expressly provided in that statute. The payment of this salary to, and its acceptance by, the respondent diminishes the sums payable to the beneficiaries of the trust and, even if it did not amount to a devastavit, would create such a personal interest in him as to conflict with his duties as trustee. It has been held that a trustee placing himself in this anomalous position should not be permitted to continue in office. (*Pyle* v. *Pyle*, 137 App. Div. 568, 573; affd., 199 N. Y. 538.) (See, also, *Elias* v. *Schweyer*, 13 App. Div. 336, 340.) The principle applicable in this connection is the familiar one which has been enunciated in innumerable cases, that a fiduciary shall not be permitted to act in that capacity where he has a personal diverse interest. The opinion in *Dutton* v. *Willner* (52 N. Y. 312) reads (at p. 318): " It is a well settled and salutary rule that ' a person who undertakes to act for another in any matter shall not, in the same matter,

act for himself.' It is only by a rigid adherence to this simple rule that all temptation can be removed from one acting in a fiduciary capacity to abuse his trust, or seek his own advantage in the position which it affords him."

*Sage* v. *Culver* (147 N. Y. 241) contributes the following (at p. 247): " When it appears that the trustee or officer has violated the moral obligation to refrain from placing himself in relations which ordinarily produce a conflict between self-interest and integrity, there is in equity a presumption against the transaction, which he is required to explain."

Judge ANDREWS used the following language in *Munson* v. *Syracuse, G. & C. R. R. Co.* (103 N. Y. 58, at p. 74): " The law permits no one to act in such inconsistent relations. It does not stop to inquire whether the contract or transaction was fair or unfair. It stops the inquiry when the relation is disclosed, and sets aside the transaction or refuses to enforce it, at the instance of the party whom the fiduciary undertook to represent, without undertaking to deal with the question of abstract justice in the particular case. It prevents frauds by making them as far as may be impossible, knowing that real motives often elude the most searching inquiry * * *." (See, also, *Wendt* v. *Fischer*, 243 N. Y. 439, 443, 444; *Matter of Michelbacher*, 241 N. Y. Supp. 178, 185; reported by memorandum only, 226 App. Div. 858; affd., 253 N. Y. 515; *Matter of Hirsch*, 116 App. Div. 367, 376, 377; affd., 188 N. Y. 584; *Matter of Clift*, 135 Misc. 417.)

The facts alleged in the petition and the natural inferences to be drawn therefrom appear to the court to be as follows:

*First.* Sidney A. Kirkman has refused to join with his cotrustees in voting the stock of the Kirkman Holding Corporation except for a board of directors controlled by him. This fact indicates a determination on his part, as far as lies in his power, to exclude his cofiduciaries from the ability to perform the duties which the law imposes upon and requires from them.

*Second.* He has, by his personal ownership of the stock of this same corporation, not only placed himself in a position where his personal interest is in potential conflict with his duties as fiduciary, but he has it in his power by this means to accomplish the exclusion of his cofiduciaries from the management of the trust, contrary to the policy of the law.

*Third.* He has, on the facts alleged, improperly and contrary to law, diverted to himself property of the trust by way of salary, and may reasonably be expected to continue this course, possibly in increasing degree, if the restraining influence of his cofiduciaries is removed in the manner which is open to him.

*Fourth.* Aside from the question of his personal stock ownership, and waiving the question of the illegality of his salary receipts, the latter constitute a personal interest in the subject-matter conflicting with his fiduciary duties which, under the decisions, amounts to sufficient ground for his removal as trustee.

It follows, in the opinion of the court, that a good cause of action is stated for at least a part of the relief demanded in the petition. The circumstance that certain of the facts stated in the petition might also furnish grounds for removal of the other two trustees as well, is immaterial for present purposes. The first ground of the motion for its dismissal must, therefore, be overruled.

There remains for consideration the second alleged basis for the dismissal of the petition, namely, that the court is without jurisdiction to determine the matter. Whereas such jurisdiction was substantially conceded on the argument, the question may deserve some passing notice.

As has been noted by this court on many occasions (*Matter of Morris,* 134 Misc. 374, 382; *Matter of Welton,* 141 id. 674, 679, 680; *Matter of Anderson,* 136 id. 110, 111; *Matter of Strandburg,* 138 id. 859), the jurisdiction conferred upon the court by the amendment contained in chapter 443 of the Laws of 1914 resulted in a vesting in it of two varieties of jurisdiction. The first may be termed the particular jurisdiction, and is contained in the paragraphs of section 40 of the Surrogate's Court Act succeeding the second. These refer to specific grants of power in respect to particular matters. The primary jurisdiction of the court, however, is covered by the second paragraph of that section: " To administer justice in all matters relating to the affairs of decedents, and upon the return of any process to try and determine all questions, legal or equitable, arising between any or all of the parties to any proceeding, or between any party and any other person having any claim or interest therein who voluntarily appears in such proceeding, or is brought in by supplemental citation, as to any and all matters necessary to be determined in order to make a full, equitable and complete disposition of the matter by such order or decree as justice requires."

Concerning the comprehensive nature of this authority, nothing can be added to the lucid language of Chief Judge CARDOZO, writing for the unanimous court in *Matter of Raymond* v. *Davis* (248 N. Y. 67, 72), where the following much-quoted words may be found: " The amendment gives notice that the powers that are specific shall hereafter be read as being ' in addition to and without limitation or restriction on ' the powers that are general (*Matter of Van Buren* v. *Est. of Decker,* 204 App. Div. 138; *Matter of Haigh,* 125 Misc.

Rep. 365, 367, 368; cf. *Matter of Kenny*, 92 Misc. Rep. 330). ' Concentration of jurisdiction as to decedents' estates ' (per FOLEY, S., in *Matter of Haigh, supra*) is the purpose clearly revealed in the statutory scheme. ' The State has empowered surrogates in unmistakable language, and it is not the function of the courts to discover or to fashion reasons for thwarting the manifest policy ' (per THOMAS, J., in *Matter of Coombs*, 185 App. Div. 312, 314). To remit the claimant to another forum after all these advances and retreats, these reconnaissances and skirmishes, would be a postponement of justice equivalent to a denial. If anything is due him, he should get it in the forum whose aid he has invoked."

Reading the second paragraph of section 40 in the light of this statement of the Court of Appeals, it must be obvious that the Surrogate's Court, since the amendment of 1914, has the power to make any decision necessary to settle any controversy between any parties properly before it. This inevitably includes the fiduciaries of a trust whose sole charter of authority arises by reason of letters issued by it.

Even in the absence of such sweeping general powers it would seem reasonably obvious on the facts of the case at bar that the court would have jurisdiction to grant at least some part of the relief sought in the present petition.

Section 99 of the Surrogate's Court Act authorizes the removal of a testamentary trustee who has " improperly applied * * * assets in his hands " or been guilty of " other misconduct in the execution of his office." The meaning of the latter phrase is carefully reviewed in *Matter of Gleason* (17 Misc. 510, 524, 525), and seems clearly to cover the actions of the respondent trustee as disclosed in the petition.

It is unquestionable that an estate fiduciary is responsible in the Surrogate's Court for a devastavit committed in his capacity as a corporate officer. (*Matter of Auditore*, 249 N. Y. 335, 342.) The alleged act of the respondent trustee in accepting a salary from the corporation whose sole business is the performance of the fiduciary duties of his office would appear clearly to fall within any proper definition of wasting or improperly applying the assets in his hands. Further than this, however, it would be an arrant absurdity to say that the court could hold a fiduciary liable after he had committed wrongful acts and not be able to prevent their occurrence before their actual commission. The allegations of the petition set forth facts from which it is reasonably inferable that the personal interests of the respondent fiduciary are in conflict with his duties to the trust, and that he proposes to serve the former. Unless, therefore, the power of the court is sufficient to permit it to

restrain the performance of such threatened wrong, all authority of a Surrogate's Court over its appointed officers can be little more than a sham and a mockery.

The broad authority of the surrogate over estates in his court and over fiduciaries appointed by him have been so fully discussed in the cases above cited that further development of the question at this time would be a labor of supererogation. The court has full equitable powers over its fiduciaries, and the resulting authority pertinent in this connection is aptly stated by Mr. Justice GRAY, writing for the Supreme Court of the United States in *May* v. *May* (167 U. S. 310): "The power of a court of equity to remove a trustee, and to substitute another in his place, is incidental to its paramount duty to see that trusts are properly executed; and may properly be exercised whenever such a state of mutual ill-feeling, growing out of his behavior, exists between the trustees, or between the trustees in question and the beneficiaries, that his continuance in office would be detrimental to the execution of the trust, even if for no other reason than that human infirmity would prevent the cotrustee or the beneficiaries from working in harmony with him, and although charges of misconduct against him are either not made out, r are greatly exaggerated."

This language was cited with approval and followed in *Disbrow* v. *Disbrow* (46 App. Div. 111, 114; affd., 167 N. Y. 606).

For the reasons stated, therefore, the motion of the respondent for the dismissal of the petition is denied, and in accordance with his request he will be granted fifteen days to file an additional or amended answer raising issues of fact with respect to the matters set forth in the petition.

Proceed accordingly.