## GRUNDY et al. v. BROOME.

### No. 4523.

Court of Civil Appeals of Texas. Amarillo.

Jan. 20, 1936.

Rehearing Denied Feb. 24, 1936.

A. S. Moss, John O. Fitzjarrald, and Hamilton & Fitzgerald, all of Memphis, for appellants.

J. M. Elliott, of Memphis, and A. T. Cole, of Pampa, for appellee.

HALL, Chief Justice.

This suit was instituted by Allen C. Grundy and B. E. Davenport, mayor of the city of Memphis, against C. W. Broome, and the case went to trial upon plaintiffs' third amended original petition. The court sustained a general demurrer to the plaintiffs' pleading, and, plaintiffs refusing to amend, judgment was rendered for the defendant.

The substance of the petition, omitting the formal parts, is that Grundy, former mayor of Memphis, and his successor in office, S. T. Harrison, and B. E. Davenport, the present mayor of said city, complaining of the defendant would show to the court that on or about the 1st day of May, 1931, plaintiffs were lawfully seized and possessed of the lands described in Hall county, Tex., claiming the same in fee simple. The first count is in form of trespass to try title, and the land described is 53 acres out of section 90, block 18 H. & G. N. Railway Company surveys in said county. After the count in form of trespass to try title, plaintiffs further alleged: That the land had been legally patented, together with other lands, to J. C. Montgomery, assignee of W. C. Stone. That said lands were conveyed by Montgomery and wife to Austin D. Arnold for a good and valuable consideration. That thereafter Arnold, having full title, for a good and valuable consideration, joined by his wife, conveyed by general warranty deed the lands to R. A. Dunbar, trustee for J. J. Mickle, J. A. Bradford, Charles Drake, and D. Browder, executive committee for the Memphis Railway Bonus Committee. That by the terms of said gen-

eral warranty deed the premises hereinbefore described were conveyed to R. A. Dunbar as trustee, and to his successors and assigns forever. That by the terms thereof the grantors bound themselves, their heirs, successors, executors, and administrators, to warrant and forever defend said premises unto the said R. A. Dunbar, trustee, his successors and assigns, etc. That said deed was duly filed and recorded in Volume 21, p. 270. That thereafter the said Dunbar, as trustee, by a general warranty deed, conveyed the lands to H. E. Deaver, trustée for the committee above named in the deed from Arnold and wife to Dunbar, trustee. That said deed is a warranty deed conveying the property to Deaver, his successors, assigns, executors, and administrators. That on the ———— day of July, 1921, Deaver, the trustee, died while the title to said premises was vested in him, and left surviving him his wife and the following children: Victor H. Deaver, P. H. Deaver, John M. Deaver, Mina Deaver, and Patricia Deaver. That on the ———— day of August, 1923 the said daughters, Mina and Patricia, died, leaving no issue born to them, and that thereafter the said Mrs. H. E. Deaver, Victor H. Deaver, P. H. Deaver, and John M. Deaver, as the sole and surviving heirs of the said H. E. Deaver, conveyed said lands by a warranty deed, dated December 31, 1930, to S. T. Harrison, mayor of the city of Memphis, and his successors in office, vesting the legal title in said Harrison, as mayor, for the benefit of the railway bonus committee hereinabove mentioned in the deed from Austin to Dunbar. That thereafter Harrison, mayor as aforesaid, conveyed the same land and premises to Allen C. Grundy, who succeeded him as mayor of said city, conveying the land to Grundy and his successors in office. That since the filing of the original petition Grundy's term of office has expired, and B. E. Davenport was duly elected and has qualified as mayor. This deed was also for the benefit of the railway bonus committee. The lands hereinabove described were conveyed to R. A. Dunbar, as trustee, for the purpose of holding the title to same as provided in a certain contract entered into by and between one Ed Kennedy and the railway bonus committee of Memphis, Tex., hereinafter referred to, which said contract is of record at page 170, Book 22, of the Deed Records of Hall County, which is referred to and made a part of the petition. That by the terms of said contract the said Kennedy agreed to construct a railroad from Memphis, Tex., to Silverton, Tex., and it was further provided that the premises herein described, together with other lands, were to be placed in a trustee to be mutually agreed upon by the parties to said contract, which said trustee should make title as the same should be sold, and should collect the proceeds thereof and place the same in a bank in Memphis to the credit of said Kennedy, where it should be paid out on estimates for the construction of the roadbed in Hall county. Said contract further provided that if the said Ed Kennedy should fail to comply therewith, all unsold lands should revert to the parties of the second part without judicial ascertainment, and in this connection plaintiffs alleged that the lands hereinabove described were a part of the lands acquired by said railway bonus committee and placed in the name of the trustee, Dunbar, to hold for the benefit of said railway bonus committee. That the said Ed Kennedy in no manner complied with the terms of his said contract, wholly failing to construct a railroad or any part thereof, as provided and agreed upon under the terms of said contract. That the lands hereinabove described were never sold by said trustee of the committee, but the same remained in the said trustee, Dunbar, and his successors and assigns, hereinabove alleged. That said lands remained under the control and possession of said trustee, and his successors and assigns, until the date hereinabove alleged in the first count, when the said defendant unlawfully dispossessed plaintiffs herein and those under whom they hold possession thereof.

Plaintiffs further alleged that the defendant Broome has, by force of arms, evicted plaintiffs from possession and control of the lands described, and is claiming title thereto and has ejected the plaintiffs therefrom, and unlawfully withholds from them the possession thereof to their damage in the sum of $1,000.

A certified copy of the contract, executed and dated May 6, 1909, by and between Ed Kennedy, party of the first part, and railway bonus committee of Memphis, and all parties contributing to the bonus for the railway, parties of the second part, is made a part of the petition by reference, and provides that Kennedy is to have the grade of a first-class railroad from Memphis to Silverton within four-

teen months, and to have steel laid from Memphis to Silverton within twenty-four months, after delivery of deeds of right of way; that in case of epidemics, strikes, or accidents beyond Kennedy's control, he is to have the usual extension of time; that in consideration of the benefits and conveniences to be derived from the building of said railroad the parties of the second part agreed to pay the party of the first part a cash bonus of $35,000 out of the funds provided for that purpose in payments as follows: $5,000 to be paid on signing of the contract; $15,000 to be made available and payable on vouchers as the work of grading proceeded; and the remaining $15,000 to be paid when five miles of steel had been laid out of Memphis. Second parties agreed to give to Kennedy 170 acres of land adjoining the town of Memphis, the title to said land being placed in a trustee to be mutually agreed by the parties to the contract, who should make title to said lands as it should be sold, and collect the proceeds thereof and place it in the bank at Memphis to his credit, where it should be paid out by him on estimates on the roadbed in Hall county as it progressed continuously out of Memphis to the county line east and west with its connection with the Lakeview right of way, all of which right of way between the point where said road makes its exit on the east or north out of Hall county where it makes its connection with the Lakeview right of way 100 feet wide shall be furnished by the party of the second part, except the "Y" which shall be furnished by the said Kennedy, and except any portion of the 170 acres deeded to the trustee agreed upon. Party of the first part agreed to secure second parties in the payment of said $1,000 with a like sum in paid-up stock in the Altus, Roswell & El Paso Railway. Party of the first part also agreed to make Memphis headquarters for the construction work and townsite company, and to establish and maintain a freight division and shops at Memphis for forty years, etc.

It is further provided if the first party shall fail to comply with the contract in building the road, all unsold land shall revert to the parties of the second part without judicial ascertainment, and all money not paid out shall revert to the parties of the second part in case the party of the first part shall fail to comply with his contract in building the road.

It was agreed that the 170 acres of land, and no part thereof, should be sold for less than $150 per acre. The contract is signed by "Edward Kennedy, Pres., H. E. Deaver, W. A. Johnson, S. S. Montgomery, D. Browder, Joe J. Mickle, Charles Drake, J. H. Brumley, J. W. Greenwood, J. F. Bradley, W. P. Cagle, R. A. Dunbar, W. K. Hollifield & Company, and J. M. Elliott."

The allegation is that R. A. Dunbar was created trustee for the railway bonus committee in a deed which Arnold and wife executed to R. A. Dunbar as trustee; that it was a general warranty deed conveying the legal title to Dunbar, as trustee, and to his successors and assigns forever, warranting the title to Dunbar, trustee, and his successors and assigns.

■ The general rule is that a trustee has no power, in the absence of authority conferred by the trust instrument, to appoint his successor or to convey the trust property to a third party to hold as trustee. The rule is stated in 1 Perry on Trusts (7th Ed.) § 287, in the following language: "The duties and powers of trustees cannot be delegated to others unless there is express authority for that purpose given in the instrument creating the trust. It follows that a power to appoint new trustees can seldom or never exist in express trusts created by deed or will. The person who creates the trust may mould into whatever form he pleases: he may therefore determine in what manner, in what event, and upon what condition the original trustees may retire and new trustees may be substituted. All this is fully within his power and he can make any legal provision which he may think proper for the continuance and succession of trustees during the continuance of a trust, and vacancies cannot be filled in any other way than that named by the grantor unless in consequence of a statutory provision or of a failure on the part of the remaining trustees to perform the duty of filling the vacancy, in which case equity will interfere. The power to appoint new trustees in place of the original ones can only be given by the author and creator of the trust."

It is said in Meck v. Behrens, 141 Wash. 676, 252 P. 91, 50 A.L.R. 207, that: "A trustee charged with management of the trust property unlawfully surrenders his discretionary powers by contracting to turn the management of the trust over to a trust company, reserving only the right to re-

ceive money from the corporation and transmit it to the cestui que trust." The text is amply supported by an editorial annotation to that case in 50 A.L.R.

In Adams v. Highland Cemetery Co. (Mo.Sup.) 192 S.W. 944, 947, it is held that the habendum clause of a deed conveying property to trustees "to have and to hold the same with the appurtenances to the party of the second part, and to its successor or successors in this trust, and to said second parties grantees and assigns forever," where there was no language used in the deed which expressly said the name "trustee" could nominate or name a successor in trust, did not, by the use of the phrase "and to said second parties grantees and assigns forever," mean that the original donee of the trust as bearing in mind that the trust instrument must be considered from all quarters in determining the meaning thereof, such language was not sufficient to confer the power of naming a successor trustee. See, also, Shepherd v. M'Evers, 4 Johns.Ch.(N.Y.) 136, 8 Am.Dec. 561; Thomas v. Carlton, 106 Fla. 648, 143 So. 780; In re Kirkman's Estate, 143 Misc. 342, 256 N.Y.S. 495; Ball v. Consolidated Realty Co., 246 Ky. 458, 55 S.W.(2d) 60; Jesseph v. Carroll, 126 Wash. 661, 219 P. 429; Coleman v. Connolly, 242 Ill. 574, 90 N.E. 278, 134 Am. St.Rep. 347; 65 C.J. 584, § 371.

It follows from these authorities that Dunbar had no right, without the consent of all interested parties, which is not shown in the petition, to name his successor in the trust by conveying the property by warranty deed. Grundy and Davenport therefore had no right to maintain the action in the capacity in which they sued.

While as a general rule this right must be challenged under Revised Statutes, art. 2010, by sworn plea, or by plea in abatement, where the allegations of the petition clearly show that they have no right whatever to recover in the capacity in which they sued, the question may be raised by exception pleaded in · limine. Reliable Iron Works v. First State Bank & Trust Co. (Tex.Civ.App.) 241 S.W. 592.

We do not intend to hold that an action in trespass to try title may not be instituted and maintained by the parties having a right to the property, or may not be hereafter instituted. We limit our holding to

the right of Grundy and Davenport to maintain this suit, and the trial court did not err in sustaining the exceptions to the petition and dismissing the case.

The judgment is affirmed.