THE CHICAGO EDISON COMPANY

*v.*

CHARLES NORMAN FAY.

*Filed at Ottawa November 23, 1896.*

1. RATIFICATION—*of forged instrument is not implied from doubtful evidence.* The ratification of a forged instrument is not to be implied from a doubtful state of facts.

2. CORPORATIONS—*forged assignment of certificate of stock confers no rights.* A corporation canceling assigned certificates of stock and issuing new certificates therefor to the assignees acts at its peril, and if such assignment is forged, the true owner of the stock, in the absence of ratification by him, may, in equity, compel the corporation to issue new certificates in lieu of those canceled, though the assignees were innocent purchasers thereof.

3. PARTIES—*to bill to compel corporation to re-issue stock canceled upon forged assignment.* The holders of certificates of stock issued to them by a corporation on cancellation of other certificates bearing a forged assignment, are not necessary parties to a bill by the true owner to compel the corporation to issue new certificates.

4. PLEADING—*when bill of interpleader cannot be maintained.* A corporation having re-issued stock to assignees upon forged assignments, cannot, when made defendant to a bill by the true owner to compel it to issue to him new certificates, maintain a cross-bill as a bill of interpleader to settle the title to the stock as between the owner and the assignees, particularly where the cross-bill contains no allegation that such owner was insolvent or that its compliance with his demand would be an over-issue of stock.

*Chicago Edison Co.* v. *Fay,* 62 Ill. App. 55, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JOHN BARTON PAYNE, Judge, presiding.

ULLMANN & HACKER, for appellant.

WILLIAMS, HOLT & WHEELER, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was a bill in equity filed by appellee, Fay, against the appellant corporation, to compel it to issue to him

two hundred shares of its capital stock in lieu of two certificates of such stock, of one hundred shares each, belonging to him, which, upon forged assignments and without his authority, had been surrendered up to the company and canceled and new certificates in lieu thereof issued to the assignees, who were innocent purchasers or pledgees.

In the latter part of June, 1894, appellee, being about to go to the seashore for the summer, left his office and some of his business affairs in Chicago in the hands of one Anderson, his private secretary and man of affairs, and gave Anderson a power of attorney to draw checks, bills of exchange and drafts, and make orders and overdrafts upon the Northern Trust Company of Chicago, and to endorse checks, drafts, bills of exchange, notes, and orders for deposit in said trust company, for appellee and in his name. In pursuance of arrangements made by appellee before his departure, (he not having theretofore received the stock from appellant,) Anderson afterward, on behalf of appellee, paid the last installment due appellant for the stock, and appellant thereupon issued the two hundred shares to Fay and delivered the same to Anderson for him. Fay had had previous dealings with Slaughter & Co., who were brokers and bankers, and who, in the course of such dealings, became acquainted with Anderson as Fay's private secretary and man of affairs. On September 12, during Fay's absence, Anderson called up Slaughter & Co. by telephone, saying, in substance, that Fay wished to sell one hundred shares of the Edison stock and had placed the limit at $125 per share. Slaughter & Co. answered that it could not be sold at that figure. Anderson replied that he would wire Fay, and on reply would let them know. The next day Anderson telephoned Slaughter & Co. to sell the stock at the market, whereupon they sold fifty shares at $123, and gave Anderson a check, payable to Fay, for $6137.50,— the amount of the sale, less their commission,—Anderson

having in the meantime forged Fay's name to the assign-
ment of one certificate of one hundred shares of the stock,
and sent such certificate, so assigned over, to Slaughter
& Co., who took it to appellant and received for it two
certificates of fifty shares each, properly transferred on
the books of the corporation, one in the name of the pur-
chaser and one in their own name. Slaughter & Co. not
being able to sell said last named fifty shares at the same
figure, Anderson obtained a loan thereon from them, os-
tensibly for Fay, of $6000, and received the same in a
check payable to Fay's order, which he endorsed and
deposited as before. About two weeks later Anderson
again inquired by telephone whether or not the fifty
shares had been sold, and was informed they had not
been,—that the price had fallen to $120. Anderson re-
plied that he did not think Fay wanted to sell at that
price, but said Fay needed more money, and it was ar-
ranged that he should send over to them the other cer-
tificate of one hundred shares and they would make a loan
of $8000 upon it. Anderson forged Fay's signature to the
assignment of this certificate as to the first, and sent it
over, and received from Slaughter & Co. a check to Fay
for $8000, upon which he endorsed Fay's name and de-
posited it to Fay's credit as before. October 4 Anderson
obtained a further loan in the same manner from Slaugh-
ter & Co., informing them at the time that Fay would
not need any more. Four days later, upon directions by
telephone from Anderson, Slaughter & Co. sold twenty-
five shares at $120, and credited the amount upon the
loans. Statements of these transactions,—one the usual
monthly statement on October 1 and the other on the
sale of the twenty-five shares,—were mailed to Fay at his
office, but he received only the last one. Slaughter &
Co. surrendered the second certificate to appellant. It
was canceled, and two certificates, one for twenty-five
shares to the purchaser and the other for seventy-five
shares to themselves, were issued and the transfer made

upon the books of the corporation, as in the first instance. Slaughter & Co. did not know of the power of attorney given by Fay to Anderson. Fay returned to Chicago about October 7, and on receiving the notice from Slaughter & Co. of the sale of the twenty-five shares, called on them October 10 for an explanation and was informed of Anderson's transactions, and he informed them he had no stock for sale. Fay on the same day checked up his account at the bank, and, having ascertained Anderson's defalcations, revoked his power of attorney. Fay had drawn some checks on his account for expenses during the summer, but Anderson had, from time to time, checked out nearly all the deposits, taking in all for his own benefit $950 more than the total amount of the money received from Slaughter & Co. Before any of the money was received from Slaughter & Co. and deposited by Anderson he had withdrawn and stolen a large sum from Fay's balance in bank, and the first check from Slaughter & Co. went in to make it up, and it is claimed by appellant that it thus appears that the money of Slaughter & Co. went to make up Fay's balances and was in part checked out and used to pay Fay's bills, and that Fay had knowledge thereof before the filing of his bill, and that as he did not refund it to Slaughter & Co. he must be held to have ratified Anderson's transfers of the stock, and so lost his right to have such stock restored or other certificates of stock issued to him by appellant. Fay obtained his first knowledge of Anderson's criminal acts on October 10, when he had the interview with Slaughter & Co. and checked up his account at the bank. This account then showed a balance in his favor of $134.84. It showed deposits corresponding in amounts and dates with the checks received from Slaughter & Co., but did not show whence they came.

Other facts not important to a decision of the case were shown, to the effect that Anderson was fully trusted by Fay and was therefore relied upon as trustworthy by

Slaughter & Co., and that Fay did need to borrow money
in his absence and had left securities in a private box at
the bank, accessible to Anderson, to be used by him as
collateral security for such loans. . But it is not pretended
that Anderson had any authority to sell or pledge the
shares of stock in question or to sign Fay's name to a
written assignment thereof.

The bill was filed October 19, and it alleged, among
other things, that the complainant had never authorized
or ratified the assignments or transfers of the two certifi-
cates of stock; that he had demanded that his name be
restored to the books of the company as a stockholder,
and that certificates of stock to the amount of two hun-
dred shares be issued to him in lieu of those which the
company had canceled. The appellant company answered,
setting up the facts, and alleged that Slaughter & Co.
paid the proceeds of the transfers of the stock to Ander-
son, as the secretary and agent of Fay, and that such
proceeds were deposited in bank to Fay's credit, and
were drawn out either by Fay or by some one authorized
by him to draw the same, and that Fay had thereby rati-
fied the acts of Anderson in disposing of the stock, and
had kept the proceeds with full knowledge of the facts,
and was estopped from denying Anderson's authority.
Appellant also filed a cross-bill setting up the same facts,
and alleging also a ratification by Fay, and that Fay well
knew, at the time of the filing of the bill, that Slaughter
& Co. claimed to be the rightful holders of said stock,
but had failed to make them parties to his bill so that
their rights and equities could be adjudicated in the
cause; that an accounting should be had between Fay
and Slaughter & Co., and their equities in said stock, and
the amount Fay had received from them, definitely ascer-
tained before appellant should be required to issue any
stock to him, and that appellant should be protected and
indemnified by Slaughter & Co. in the event it should be
required to issue such stock. Slaughter & Co. were made

parties to this cross-bill, and they filed their answer thereto and also filed their cross-bill, in which their version of the facts was set forth, and in which they insisted that Fay was not entitled to the relief he asked until he refunded to them the moneys received from them by Anderson, his secretary; that they were interested in the suit and were necessary parties; that they were entitled to the stock held by them, and that Fay should be enjoined from prosecuting his bill further until their rights and equities were determined or their money refunded. Fay filed a replication to appellant's answer but demurred to its cross-bill, and moved to strike the cross-bill of Slaughter & Co. from the files. The demurrer and motion were both sustained by the court, and on a hearing before the chancellor, in open court, a decree was rendered as prayed in Fay's bill. The Appellate Court, on appeal by the appellant company, affirmed this decree.

The decree below was right, and was properly affirmed by the Appellate Court. Appellant acted at its peril in canceling Fay's certificates of stock and in issuing to others other certificates therefor on the forged assignments. Forgery can confer no rights or authority upon anybody. 1 Cook on Stockholders, sec. 365; *Telegraph Co.* v. *Davenport,* 97 U. S. 369.

As to appellant's cross-bill, the demurrer was properly sustained to it. The alleged ratification was fully set up in the answer, and that issue was fully tried and considered under the bill and answer. The cross-bill was unnecessary.

Appellant endeavored on the trial to prove Fay had ratified Anderson's disposals of the two certificates of stock by the fact that the checks given were payable to Fay's order, and that, when received by Anderson, they were by him placed in bank to Fay's credit; that Fay enjoyed the benefit thereof; that Anderson, in withdrawing the moneys, acted under power of attorney from Fay, and that Fay, before filing his bill, had knowledge that

he had had the benefit of Slaughter & Co.'s money and had made no restitution to them. But the finding was, and we think properly so under the evidence, that there was not sufficient evidence to show that Fay knowingly took or retained any of Slaughter & Co.'s money derived from the transfers of stock, and it was necessary to show knowledge on the part of Fay before an implied ratification could be established on the grounds attempted. Ratification, especially in such a case, should not be presumed from a doubtful state of facts. (1 Am. & Eng. Ency. of Law,—2d ed.—1195.) While this court has held that a forged note may be ratified by the principal so as to bind him, (*Livings* v. *Wiler*, 32 Ill. 387, *Hefner* v. *Vandolah*, 62 id. 483, and *Hefner* v. *Dawson*, 63 id. 403,) it has not, to our knowledge, been held in any case that a ratification of a forged instrument can be implied from a doubtful state of facts.

It would be a question of some nicety to determine from the evidence in the record whether Fay had received any such benefit from the deposits of Slaughter & Co.'s money as to impose liability on him; but that is a question which may or may not arise between that firm and Fay, and which is not necessary to be, and is not, determined in this case.

A clear liability of appellant to restore appellee to his rights as a stockholder, of which appellant had wrongfully deprived him by canceling his certificates and issuing new ones therefor to other parties on the forged assignment, being apparent, it was not necessary, upon the case as made by the pleadings for appellee, to wait for an accounting between himself and Slaughter & Co., and for the investigation of the question as to whether or not he should account to them for one or more or all of the four several amounts which they, by their checks to him, had put into the hands of Anderson. Questions might well arise in such a case which would not be germane to the question between appellant and appellee.

Appellant could not maintain its bill as a bill of interpleader from the standpoint of a stakeholder, as supposed by counsel. It was not then the holder of shares of stock in which it had no interest, claimed by several different persons, so that it could call on them to interplead and settle the question of title between themselves, but it had already canceled the certificates and issued new ones to other parties, and stricken appellee's name as a stockholder from its books, wrongfully and without any authority whatever. Its duty was to repair the injury it had done, and then seek redress from those, if any, liable to it. There was no allegation in either of the cross-bills that appellee was insolvent, or that, if the certificates of stock should be issued to him as prayed, there would be an over-issue of stock, so as to raise the question insisted upon by appellant, that in order to do complete justice all the parties to these several transactions should be before the court in the same case.

There was no error in sustaining appellee's demurrer to appellant's cross-bill nor in striking the cross-bill of Slaughter & Co. from the files. *Pratt* v. *B. & A. R. R. Co.* 126 Mass. 443; *Machinists' Nat. Bank* v. *Field,* id. 345; *American Tel. Co.* v. *Day,* 52 N. Y. Sup. Ct. 128; *Telegraph Co.* v. *Davenport,* 97 U. S. 369; *Mayor of Baltimore* v. *Ketcham,* 57 Md. 23; *Dalton* v. *Midland Railway Co.* 12 C. B. 458.

It seems to have been held in *Blaisdell* v. *Bohr,* 68 Ga. 56, that in such a case the transferees of the stock were proper parties; but in that case, as suggested by counsel for appellee, they were made parties to the original bill and alternative relief was prayed against them.

Finding no error in the record the judgment of the Appellate Court is affirmed.          *Judgment affirmed.*