JOHN J. COLEMAN *et al.* Appellees, *vs.* JAMES CONNOLLY *et al.* Appellants.

*Opinion filed December 22, 1909.*

1. POWERS—*when power must be exercised by joint action of trustees.* A power of sale conferred upon two daughters of the testator as executrices and trustees must be presumed to have been conferred by reason of the trust and confidence reposed in them by the testator, and can be executed only by their joint action unless other provision is made in the will.

2. SAME—*power of one executor to sell where others fail to qualify.* If a power of sale is given to two or more persons as executors and only one qualifies, the power cannot be exercised by that one unless it is shown that the others not only failed to qualify but that they refused to do so.

3. SAME—*when the power of trustee to act alone terminates.* Where a will appoints two of the testator's daughters as executrices and trustees, without bond and with power to sell land, and provides that if one dies the survivor may act alone until a third daughter attains her majority, "who shall qualify after she reaches her majority," the power of the survivor to act alone terminates when the third daughter attains her majority, as she at once becomes a co-trustee whether she qualifies as executrix or not.

4. SAME—*executrix cannot delegate a power of sale to agent.* An executrix-trustee vested with a power of sale by the terms of the will may employ an agent to find a purchaser for the property, but the sale and contract therefor can be made only by the

executrix-trustee, as the power of sale is a personal trust, which cannot be delegated.

5. PRINCIPAL AND AGENT—*when qualification of additional executrix terminates agent's authority.* Even though an executrix-trustee may, at the time of authorizing an agent to sell certain property, have had the power to make a contract of sale, yet if no contract of sale is made until another person has qualified as co-executrix, with equal powers under the terms of the will, the agent's authority is terminated.

6. SAME—*a knowledge of the facts is essential to ratification.* The fact that a former agent for the trustees of an estate turns over to their new agent, among other funds, a sum of money which the former agent had receipted for in the name of one of the trustees as a payment on the purchase price of certain land, does not bind the trustees to carry out the contract of sale on the theory of ratification, where there is no evidence that they knew the former agent had any money from that source or that he had executed the receipt.

7. EQUITY—*when a court of equity may decree accounting for rent.* Where a bill for partition charges that certain defendants are in possession of the land claiming ownership under a certain contract of sale made by a third person and refuse to surrender possession, and the bill prays for an accounting as incident to the other relief, the court may, upon granting partition, decree an accounting for rent against such defendants.

APPEAL from the Circuit Court of Kane county; the Hon. MAZZINI SLUSSER, Judge, presiding.

RAYMOND & NEWHALL, for appellants.

C. I. McNETT, for appellees.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

Appellees, John J. and Mary A. Coleman, filed their bill in the circuit court of Kane county for the partition of lot 3, block 10, Clark Seminary addition to Aurora. The bill alleged that John J. Coleman was the owner of the undivided one-fourth and Mary A. Coleman the owner of the undivided three-fourths of the premises; that Mary A.

Coleman derived title to the whole of the premises by purchase from Anastasia Cummings Healy and Margaret Cummings Byrne, individually and as executrices and trustees of the last will and testament of Pierce Cummings, deceased, who was in his lifetime the owner of the property, and that thereafter Mary A. Coleman conveyed an undivided one-fourth interest to John J. Coleman, her husband. The bill further alleged that at the time the complainants therein purchased the property James Connolly and Mary Connolly were occupying it by virtue of a pretended receipt from one J. P. Callan; that on the 15th of February, 1907, the complainant Mary A. Coleman demanded possession in writing from James and Mary Connolly, but they refused to deliver it to complainant and claimed to own or have an interest in the premises by virtue of the receipt from Callan, executed prior to the purchase by the complainant Mary A. Coleman; that Callan claimed to have executed the receipt referred to as agent of Anastasia Cummings Healy and that it was executed prior to the purchase by Mary A. Coleman. The bill further alleged that Callan had no authority to execute the paper or to make a contract of sale to the premises with the Connollys; that they acquired no rights by virtue of said paper and had no interest in or title to the premises. The prayer of the bill was for partition and that the Connollys be decreed to account to complainants for the occupancy of the premises.

The Connollys (appellants here) answered the bill, denying that complainants were the owners of the property, and alleging that on the 29th of July, 1904, they (respondents) purchased the real estate in controversy from Anastasia Cummings Healy, who was then sole executrix and trustee under the will of her father, through J. P. Callan, her agent, for the sum of $1000; that they paid $60 at the time and on March 1, 1905, entered into possession; that they have made valuable improvements on the premises and have always been ready and willing to pay the balance due

upon receipt of a good and sufficient deed; that they had requested the execution of the deed and offered to pay the balance due upon its receipt, but the deed has never been delivered. They further allege that they are now willing, and offer, to pay whatever sum the court may find is the balance due, upon delivery to them of a deed. The answer further avers that appellees had notice of the rights of appellants at the time they acquired a conveyance of the premises, and that they ought, in equity, to be decreed to convey to appellants the premises on payment of the balance due. The appellants also filed a cross-bill, setting up substantially the same facts recited in their answer, and praying that appellees be decreed to specifically perform the contract for the sale of the premises made by appellants with Anastasia Cummings Healy, through her alleged agent, Callan.

The evidence was heard before the chancellor, and a decree entered on the original bill for partition and that appellants be required to account to appellees for the detention and use of the premises from the time appellee Mary A. Coleman acquired the conveyance therefor. The decree found the rental value of the premises during that period to be $12 per month and directed payment of that sum to be made to appellees. The decree further found that Callan had no authority to make a contract with appellants for the sale of the property and that they obtained no interest in the property thereby. The cross-bill was dismissed for want of equity.

Pierce Cummings at the time of his death was the owner of the premises described in the bill. He left surviving him a widow and three daughters, Anastasia Cummings, (now Healy,) Elizabeth Cummings and Margaret Cummings, (now Byrne.) The latter was the youngest of the three daughters and was a minor at the time of her father's death. By his last will Pierce Cummings devised his residuary estate (which included, among other real es-

242—37

tate, the lot in controversy,) to his three daughters. The will provided that in case of the death of either of them then the property should go to the survivor or survivors. The trustees and executrices of the will were given power and authority to take charge of the residuary estate, keep the same in repair and collect the rents therefrom, and in their discretion, if deemed for the best interests of all concerned, to sell the property, full power and authority to sell, make conveyances and do everything necessary to vest title in the purchaser being expressly conferred. The daughters Anastasia and Elizabeth were appointed executrices, and the clause appointing them reads as follows:

"*Eleventh*—I hereby nominate and appoint my two children Anastasia and Elizabeth Cummings to be the executors of this my last will and testament and my trustees for the carrying out of the provisions of this will, and in case of the death or disqualification or the failure to act of any one of my said executors and trustees, then I appoint as her successor my said daughter Margaret, who shall qualify after she reaches her majority, and pending which time such of my said daughters first named as has qualified hereunder may act alone; and in case of the death or other disqualification of two of my said children then the survivor shall act as such executrix and trustee under this will; and any discretionary powers hereinbefore granted to my executors or trustees shall be vested in any one or more of my said children who may be acting as executors or trustees under this will at such time as in the judgment of such one or more may require the exercise of such discretion. And I direct that none of my said children shall be required to give any bond or security as such executors or trustees, as aforesaid."

Pierce Cummings died October 21, 1893, and letters were issued to his daughters Anastasia and Elizabeth on October 31, 1893. Elizabeth died September 12, 1896. At that time Margaret was a minor and did not become of

age until the year 1899 or 1900. The proof is not definite as to the exact time she attained her majority. After the death of the daughter Elizabeth, and until the daughter Margaret attained her majority, Anastasia was sole executrix and trustee, with full power to carry out the provisions of the will. Letters testamentary were not issued to the daughter Margaret until July 28, 1904. The appellants claim title to the premises in controversy by virtue of authority they allege Anastasia Cummings Healy gave Callan, as her agent, to sell the property before letters testamentary were issued to the daughter Margaret. It is not claimed that authority to make the sale was given by Anastasia Cummings Healy before Margaret attained her majority. It is not denied that the alleged authority given by Anastasia Cummings Healy to Callan to sell the property was long after Margaret had attained her majority, but it was before she had qualified as executrix. The alleged authority to Callan to make the sale of the property is in a letter written him by Anastasia Cummings Healy on June 23, 1904. The letter states that the writer appoints Callan her general agent and attorney to transact all her business in connection with the settlement of her father's estate, and authorizes him to rent the property and collect the rents, keep the property in repair, insure it and to sell certain real estate, including the lots in controversy. It will be seen this letter was written four or five years after Margaret had attained her majority and one month and five days before she qualified as executrix. The contract for the sale of the premises to appellants by Callan was made July 29, 1904, which was one day after Margaret had qualified as executrix. The only written evidence of the contract with appellants is the following:

"AURORA, ILLINOIS, *July 29th, 1904.*

"Received of James Connolly $60 to apply on purchase of the Cummings house and lot, No. 442 or 446 South Broadway, Aurora, Illinois. Price of house and lot to be $1000.

STESSIA CUMMINGS HEALY, *Executor.*

J. P. Callan, *Agent.*"

The first question to be determined is whether appellants obtained any rights by virtue of the alleged contract made by them with Callan for the purchase of the premises July 29, 1904. We think this question must be answered in the negative. The power of sale was vested by the will in the trustees and executrices. It was a personal trust and confidence reposed in them and could not be delegated to an agent. It would have been competent for the trustees and executrices to employ an agent to find a purchaser, but the sale and the contract therefor could only have been made by them. Besides, it seems plain from the will of Pierce Cummings that the power of sale conferred upon the trustees and executrices therein named was never intended by him to be, and could not have been, executed unless by both trustees and executrices joining, except, as provided in the eleventh clause, one of the two older daughters named should die while the youngest was still a minor. In that event the surviving trustee and executrix was authorized to exercise all powers conferred by the will until the youngest daughter, Margaret, attained her majority, "who shall qualify after she reaches her majority." There is no intimation in the evidence that Margaret at any time ever refused to qualify. The will exempted the trustees and executrices from any duty or liability to give bond, and the only thing necessary for Margaret to qualify as executrix was to apply for and have letters issued to her. This she did, but not immediately upon attaining her majority. In *Clinefelter* v. *Ayres,* 16 Ill. 329, will be found an elaborate discussion of the right of one of a number of executors to execute a power of sale conferred by the will where those named as co-executors failed to qualify. The authorities, both English and American, are reviewed in the opinion, and it was held that in order to entitle the one executor qualifying to execute the power, it must be shown, not that those named as co-executors failed to qualify, but that they refused to do so. In that

case the record recited that the co-executors declined acting, but it was held insufficient. In *Pennsylvania Company for Insurance on Lives* v. *Bauerle,* 143 Ill. 459, the court said on page 474: "One of several executors to a will cannot exercise a power of sale under it unless it is shown that the others refused to act, and such refusal must be shown positively and affirmatively, and some unequivocal manifestation by the executors named must be given in order to divest themselves of the rights, duties and powers conferred, not by the law, but by the act and will of the testator,"—citing *Clinefelter* v. *Ayres, supra,* and other cases. The two older daughters were named not alone as executrices but as trustees also, and as such the power of sale was conferred upon them. As trustees, alone, no act was required of them to qualify. To authorize them to discharge the duties of executrices it was necessary only that letters testamentary be issued. After the death of the daughter Elizabeth and the attaining of her majority by Margaret she became a co-trustee with her surviving sister, and in our opinion it was necessary to a valid sale that she join in the conveyance. The power of sale conferred upon the trustees and executrices must be presumed to have been conferred by reason of the trust and confidence reposed in them by the testator, and could be executed only by all those upon whom it was conferred acting jointly. *Stose* v. *Heissler,* 120 Ill. 433.

There is an additional reason in this case why we think the agreement made by appellants with Callan for the purchase of the property was invalid. Said agreement was not made until after Margaret had qualified as executrix. She refused to recognize the agreement between appellants and Callan and declined to agree to a sale to appellants or to join in a conveyance to them. If it were conceded that Anastasia Cummings Healy had power to sell and convey at the time it is claimed she authorized Callan to sell the property, she made no contract for its sale to ap-

pellants until after Margaret had become a qualified, acting co-executrix, and this would necessarily terminate any authority Callan might have had from Anastasia Cummings Healy prior to that time on the theory that she was sole executrix and trustee.

It is next contended that even if Callan had no authority to make the agreement with appellants for the sale of the property at the time he did make it, it was afterwards approved and ratified by both trustees and executrices, and thereby became a valid and binding agreement upon them. It appears that Margaret Cummings Byrne objected to Callan acting as agent for the trustees and executrices in any capacity, and on the 19th day of January, 1905, they, together with their mother, who was entitled to a share in the proceeds of the property under the will, executed an instrument by which they agreed to appoint F. H. Hotz their attorney and agent. The fourth clause of said instrument is as follows:

"*Fourth*—It is further agreed that the said parties shall make and execute a more formal power of attorney to the said agent to carry out the provisions of this contract, and it is agreed that said agent shall pay all just bills which are due for repairs, improvements or taxes on any of the said real estate, and that all moneys in the hands of J. P. Callan or C. A. Bennett for collections of rents or for sales of said real estate subsequent to June 23, 1904, shall be immediately turned over to the said agent."

Callan testified that after the execution of the instrument he paid Hotz the $60 received from appellants under the agreement made by him with them for the sale of the property. It is contended that the receipt of this money by the trustees and executrices through their agent, Hotz, amounted to an approval and ratification of the contract of sale to appellants, and that as this occurred before the sale to appellees, they were bound, in equity, to execute a deed to appellants upon their paying or tendering the balance of

the purchase money due. It is also contended that appellees were bound to take notice of the rights of appellants, because they were in possession of the property before and at the time appellees purchased it. We do not think this position tenable, for the reason that there is no evidence tending to show that the trustees and executrices had any knowledge that Callan had ever received any money whatever from appellants on the purchase of the property or executed to them any acknowledgment of the receipt of any money. There is no evidence that when the agreement was made appointing Hotz their agent and authorizing him to receive moneys from Callan for the sale of property the trustees and executrices knew that he had any money from the sale of the property in controversy. It was essential that knowledge on their part of these facts should have been proven before the acceptance of the $60 by Hotz could be considered upon the question of ratification. *Cadwell* v. *Meek,* 17 Ill. 220; *Mathews* v. *Hamilton,* 23 id. 470; *Reynolds* v. *Ferree,* 86 id. 570.

Lastly, it is claimed that there was no privity of contract between appellants and appellees and that it was therefore erroneous for the court to decree an accounting for the rent of the property. The bill prayed for an accounting as an incident to other relief that was cognizable only in a court of equity. The court having jurisdiction of the parties and the subject matter for the purpose of administering equitable relief had authority to adjudicate all the rights of the parties, even though some of those rights may have been cognizable in a court of law. *Hadley* v. *Morrison,* 39 Ill. 392; *McDowell* v. *McDowell,* 114 id. 255; *Stickney* v. *Goudy,* 132 id. 213; 1 Pomeroy's Eq. Jur. sec. 180.

We are of opinion the decree of the circuit court is supported by the law and the evidence, and it is affirmed.

*Decree affirmed.*