**Louis L. Scharf, Appellee, v. G. W. Solomon, Appellant.**

**Gen. No. 9,120.**

Heard in this court at the April term, 1938.
Opinion filed October 14, 1938.

BARBER & BARBER, of Springfield, for appellant.

HOMER D. McLAREN, of Springfield, for appellee.

MR. JUSTICE · HAYES delivered the opinion of the court.

Hereafter in this opinion Louis L. Scharf, plaintiff appellee, will be referred to as plaintiff, and G. W. Solomon, defendant appellant, will be referred to as defendant.

This is an appeal from a judgment for one thousand two hundred and thirty ($1,230) dollars, against G. W. Solomon, defendant, recovered by Louis L. Scharf, plaintiff, in an action for money had and received, for failure to invest one thousand dollars in accordance with the provision of a receipt delivered by the defendant to the plaintiff, at the time of said payment. This case was tried by the court without a jury.

The record discloses, that in 1932, the defendant, with two of his brothers and other business associates, in the Panther Creek Mines Inc., of which he was an officer, were promoting the organization of a company for the manufacture of a material known as vermiculite, to be used for insulating purposes.

On June 7, 1932, the plaintiff, gave his check to the defendant, for one thousand dollars, and received a receipt, signed by defendant, for the one thousand dollars par value, which receipt recited that it was for ten (10) shares of a total one thousand (1,000) shares, of one hundred ($100) dollar par value stock, to be issued in the Smith Insulating Manufacturing Company, to be formed for the manufacture of vermiculite insulating block, brick and pipe covering, and the stock certificate

would be issued as soon as the company was formed. At that time plaintiff was in the employ of the Illinois Watch Company at Springfield, and the defendant was the vice-president of the Panther Creek Mines.

It appears from the record, that all the officers and office employees of the Panther Creek Mines put some money in the proposed vermiculite company, and the defendant told the plaintiff that he should have some stock in this proposed company. Shortly thereafter, the plaintiff gave his check for one thousand dollars to the defendant and took the receipt in question. In April, 1933, the plaintiff went to work for the Panther Creek Mines, as collector and solicitor for them, and afterwards as purchasing agent, and continued to work for them until April, 1937, at which time he was let out,—the mine company desiring to cut expenses.

The Smith Insulating Manufacturing Company was not formed. Defendant contends that in lieu of the Smith Manufacturing Company, the International Vermiculite Company was formed, on April 18, 1933. The record discloses that the capital structure of the International Vermiculite Company consisted of seven thousand (7,000) shares of non par value, and six hundred (600) shares of one hundred ($100) dollar par value, preferred stock, which was different from the specification set out in the receipt. The receipt called for ten (10) shares of one hundred ($100) dollar, while the stock tendered was non par value, and was subject to a preferred stock issue, with cumulative dividends at the rate of seven (7) per cent per annum, and in the event of liquidation or dissolution, preferred both as to assets and earnings. Shortly after, plaintiff was discharged by the Panther Creek Mines, through his attorney, he made a demand on the defendant for the return of the one thousand dollars, and within a day or two after that, he files this suit. Up to that time no stock certificate had been delivered to him. The

first time the defendant tendered the stock certificate was during the trial of this cause in the circuit court. The certificate was then for ten (10) shares of common stock, no par, of the International Vermiculite Company, dated April 24, 1937.

Defendant contends that the finding of the circuit court was against the weight of the evidence, and should be set aside. He set up as a defense, in his pleading below, that plaintiff's silence and failure to repudiate for more than four years constitutes a ratification of the investment of one thousand dollars in the International Vermiculite Company, as it was created, and that plaintiff waived the difference in the capitalization of the proposed company as set out in the receipt, and the company as it was actually formed.

Before plaintiff could ratify the act of the defendant in investing his money in the common no par value stock of the International Vermiculite Company, he must have had knowledge of such fact, and the burden is upon the defendant in this case to introduce evidence proving such fact. 3 C. J. S., Agency, Sec. 319 (2).

Ratification is presumed to have been with knowledge of the facts; but it cannot be inferred in the face of a denial by the principal of all knowledge of the acts in question. 3 C. J. S., Agency, Sec. 319 (1).

A party alleging, asserting, or relying on a ratification of the unauthorized act of an agent has the burden of proving it. To sustain the burden of proof, the party on whom it rests must show that the ratification was made under such circumstances as to be binding on the principal; he must show that the principal intended to ratify and, at the time of ratification, had full knowledge of all the material facts connected with the transaction. 3 C. J. S., Agency, Sec. 319 (2).

In the case of the *Farmers Nat. Bank v. Trautwein*, 228 Ill. App. 356, it is said: It is a well settled rule that knowledge of the terms and conditions of an un-

authorized contract entered into by an agent is not to be presumed from the fact that the principal had a reasonable opportunity to acquire such knowledge. A principal's ratification of an agent's unauthorized act must be clearly shown, either directly or impliedly, from clear and unequivocal circumstances. In order to bind a principal by ratification, assent or acquiescence in prior acts of his agent in excess of authority actually given, a knowledge of the material facts must be brought home to him. He must have been in possession of all of the facts, and must have acted in the light of such knowledge. 21 R. C. L. 928; *Coleman v. Connolly*, 242 Ill. 574, 583; *Cadwell v. Meek*, 17 Ill. 220, 227.

As said by Justice Story, in the case of *Owings v. Hull*, 9 Peters 607: "No doctrine is better settled, both upon principle and authority, than this:—that the ratification of an act of an agent previously unauthorized, must, in order to bind the principal, be with a full knowledge of all the material facts. If the material facts be either suppressed or unknown, the ratification is treated as invalid, because founded in mistake or fraud."

It is clear from this record, that the agent in this case did not carry out the undertaking set out in the receipt, but his answer to this is that the plaintiff knew of the changes and acquiesced in them. The decisive factor in the case is whether or not plaintiff had full knowledge of the material changes made; when the International Vermiculite Company was formed; or was given notice thereof, any time during the four succeeding years prior to his demand for the return of his one thousand dollars. Examination of the evidence on this point discloses that the defendant, who testified as a witness in the case, stated that he never discussed the change of the capital structure with the plaintiff; that he did not take his employees into his confidence

in regard to the formation of the company. Nowhere in his evidence is there anything to show that the plaintiff was given notice of the difference in the capital structure from that set out in the receipt. He stated that he had had conversations with the plaintiff in reference to the International Vermiculite Company, the substance of which was that plaintiff was inquiring how "our" vermiculite was getting along. There were three other employees of the defendant, and the president of the International Vermiculite Company, who testified, and an analysis of their testimony is similar to that of Mr. Solomon's;—that plaintiff, on a number of occasions, visited the plant of the International Vermiculite Company, at Springfield, and would inquire as to how the business was, and looked around the plant, and on one occasion carried away some of the product manufactured there; but nowhere in all the testimony offered by defendant is there anything that even tends to establish that plaintiff had knowledge of the capital structure of this company. It does appear, however, both from his own testimony, and that of the witnesses for the defense, that he knew of the change in name from the Smith Insulating Manufacturing Company to the International Vermiculite Company. Both the defendant, and the president of the International Vermiculite Company, admit they never sent him any notices of a stockholder's meeting, neither do they claim to have ever notified him as to what the capital structure of the company was. Defendant gives as an excuse why the stock certificate was not issued sooner, that the secretary was dilatory. He further states that it was in April, 1936, that he forwarded to the secretary of the corporation, a list of the subscribers of the stock.

Defendant contends in their brief, that under the circumstances the law does not permit plaintiff to speculate upon the result, over a course of more than

four years, and ratify or repudiate, depending upon the financial outcome, when he could have ascertained the change. It can be said with equal force, under the circumstances, that the law will not permit defendant to speculate. He didn't let go of the stock certificate, which it was his duty to furnish, within a reasonable time. With equal propriety, it can be said that defendant was waiting to see if the venture was a big money-earner, and if so, return the one thousand dollars, and if it failed, to tender the stock certificate.

The responsibility for definite action was on the agent in the first instance. The principal had put up his money for a specific purpose, and the agent left himself in a very vulnerable position, when he appropriated the money to another and different proposition, and tendered no stock certificate or gave no definite notice to plaintiff. Defendant further contends in his argument, that the close association of plaintiff and defendant, together with the other employees over so long a period, gave an ideal opportunity for repudiation. It is significant that a few months after plaintiff put up his one thousand dollars, defendant gave him a job. Plaintiff was not in the same position to make pertinent inquiry of his employer, as he would be were he dealing with a stranger at arm's length. This is more apparent from the fact that almost instantly on being discharged by defendant, he demanded his one thousand dollars.

Although there is considerable in the record that might cause a keen business man to take action long before plaintiff did, we cannot say, taking the record as a whole, that the trial judge was not warranted in the conclusions that he reached, and the finding that he made.

The only remaining question in the case is the allowance of interest in the sum of two hundred and thirty ($230) dollars, which the trial court computed from

April 18, 1933, being the date of the incorporation of the International Vermiculite Company. There is nothing in the record to show the date on which the thousand dollars, paid by the plaintiff to the defendant, was turned over by the defendant to the International Vermiculite Company. No right to interest existed at common law, and it is only allowable by virtue of statute. *Totten v. Totten,* 294 Ill. 70.

The first and only time plaintiff made any demand on the defendant, for the return of the one thousand dollars, was on April 19, 1937, just prior to filing the suit. The plaintiff did not fix any definite time, at the time he gave the defendant the one thousand dollars, when the transaction should be completed. This was left open by both parties. There is nothing in the record to show the defendant ever used the money for his own personal use. The most that can be said against him, is that he applied it to a different undertaking than that designated by his principal; without giving full knowledge to the principal of the circumstances surrounding the case, and the loose way that both plaintiff and defendant transacted the business makes it fall in that classification of cases where a demand should first be made before interest is assessable.

In the case of *Brennan v. Gallagher,* 199 Ill. 207, it is said: The contract being only ultra vires, and not *malum in se* or *malum prohibitum,* and the corporation having received money under it which in equity and good conscience belongs to appellee and which it ought to pay over to him, it is liable in an action for money had and received, with interest at the legal rate from demand made.

It is very generally held that in the absence of a special agreement as to interest, or as to the time the debt is to be paid, interest should be allowed on such debt only from the time the principal is demanded, or

in the absence of prior demand, from commencement of suit. 33 Corpus Juris, 233.

The trial court erred in assessing interest from April 18, 1933. The interest should have been computed from April 19, 1937, being the date of the demand. If the plaintiff wants to remit the amount of one hundred fifty-four dollars and seventeen cents ($154.17) within 20 days from the entry of this opinion, this court will give him a judgment for the one thousand seventy-five dollars and eighty-three cents ($1,075.83). If not, the court will reverse the case, with directions to the lower court to enter a judgment in the sum of one thousand ($1,000) dollars, with interest from April 19, 1937.

*Affirmed in part, reversed in part, with directions.*