Claire B. MORSE, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 15963.

United States Court of Appeals
Ninth Circuit.

April 15, 1959.

George T. Altman, Beverly Hills, Cal., for appellant.

Charles K. Rice, Asst. Atty. Gen., Helen A. Buckley, Lee A. Jackson, Robert N. Anderson, Charles B. E. Freeman, Attys., Dept. of Justice, Washington, D. C., Laughlin E. Waters, U. S. Atty., Edward R. McHale, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before STEPHENS, Chief Judge, BARNES, and JERTBERG, Circuit Judges.

JERTBERG, Circuit Judge.

This appeal involves transferee liability[1] of appellant[2] for unpaid corporate income and excess profits taxes which were assessed for the calendar year 1942 and for the period January 1, 1943 through April 30, 1943.

The district court entered judgment in favor of appellee and against appellant in the assessed amount of $10,705.69, with interest at six per cent per annum from May 1, 1943, but limited to a total of $12,000.

The following is a history of this case leading up to the judgment of the district court as reflected in the record, particularly in the pretrial order and findings of fact.

Borin Art Products Corporation, an Illinois corporation, was organized in September 1932. The central figure of the corporation, and Borin Art Products Company, a partnership, hereinafter referred to, was Nathan Borin, to whom appellant was married in November of 1933, and from whom she separated in 1945 and was divorced in March of 1949. The corporation was dissolved on April 30, 1943, and on or about the same date the said corporation trans-

---

1. Internal Revenue Code of 1939:

"§ 311. Transferred assets.

"(a) Method of Collection. The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this chapter (including the provisions in case of delinquency in payment after notice and demand, the provisions authorizing distraint and proceedings in court for collection, and the provisions prohibiting claims and suits for refunds):

"(1) Transferees. The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed upon the taxpayer by this chapter.

"* * * Any such liability may be either as to the amount of tax shown on the return or as to any deficiency in tax. * * *"

26 U.S.C.A. § 311.
Treasury Regulations 111, promulgated under the Internal Revenue Code of 1939:

Sec. 29.311–1. Claims in Cases of Transferred Assets.— * * * The term "transferee" as used in this section includes an heir, legatee, devisee, distributee of an estate of a deceased person, the shareholder of a dissolved corporation, the assignee or donee of an insolvent person, the successor of a corporation, a party to a reorganization as defined in section 112, and all other classes of distributees.

2. Appellant commenced a suit to enjoin the district collector of Internal Revenue from collecting the assessed tax. The appellee intervened, under authority of section 7401, Internal Revenue Code of 1954, 26 U.S.C.A. § 7401, to recover the assessed taxes from the appellant. The parties stipulated the injunction is moot. Hence the case is a suit by the United States to collect the assessed taxes.

ferred all of its assets, subject to all of its liabilities, to an entity known as Borin Art Products Company, and after said transfer the corporation had no assets or anything of value. Prior to said transfer of assets the shareholders of said corporation transferred their stock in said corporation to said entity, and at the time of said transfer of assets the said entity was the sole shareholder of said corporation.

Under the partnership agreement of Borin Art Products Company, dated May 1, 1943, Nathan Borin was named as the sole general partner, and appellant was named as one of 16 limited partners. The partnership agreement recited that the parties to said agreement were the sole owners of the shares of stock of Borin Art Products Corporation, and that the parties held shares of stock in the amounts set opposite their names. The number of shares set opposite the name of appellant was 80 shares. The aggregate number of shares set opposite the names of all parties named in said agreement was 800. Said agreement further stated that "the amount of cash and a description of, and the agreed value of the property contributed by each Limited Partner is as follows". Opposite the name of appellant, under the heading "amount contributed," appears the statement, "10% of company assets of the agreed value of $12,000." By the terms of said agreement, Nathan Borin was granted the right to terminate the partnership on April 30th of any year by delivering to the office of the partnership at least six months prior to such time a written notice of termination, and Nathan Borin was granted a lien on any profits of the partnership payable to any limited partner who should become indebted to him for any reason.

The books and records of the corporation and apparently some of the partnership, were destroyed by fire which occurred in January of 1946.

Upon the return of appellant to her home in Illinois from a trip to Florida in the spring or summer of 1945, appellant discovered that Nathan Borin had removed from the home. In the home appellant discovered certain records and documents pertaining to the affairs of the partnership. While the record is not too clear, it is fair to state that the partnership agreement was among such records and documents.

Appellant turned over all such records and documents to an attorney who prepared and filed in the Illinois state court a "complaint in chancery for dissolution of the partnership, accounting, and other relief", signed and verified by appellant. In the complaint, it was alleged that on or about the first day of May, 1943, the said Nathan Borin, the appellant, and certain other individuals, entered into a certain limited partnership agreement, known as Borin Art Products Company, which operated from the date of the agreement to about the 10th of January, 1946; that during all of the time the partnership was in existence the same was entirely under the control, direction and domination of Nathan Borin; that Nathan Borin had been guilty of many acts of fraudulent wrongdoing in handling the affairs of the partnership, including misappropriation of funds and fraudulent bookkeeping; that the effect of the fire was to force the discontinuance of the business of the partnership and to transfer said partnership assets into a number of causes of action against insurance companies under insurance policies which were in effect at the time of the fire; that appellant's interest in the assets of the partnership consist substantially of a ten per cent interest in the claims and causes of action against the insurance companies. The complaint prayed for a dissolution of the partnership, for an accounting, for judgment in favor of appellant in any amount found due on the accounting, and that Nathan Borin be enjoined and restrained from collecting proceeds on the insurance policies. The record in this case is silent as to further proceedings on this complaint in chancery.

There was received in evidence abstract of record in the action of Borin v. Borin, 343 Ill.App. 649, 100 N.E.2d 333

in the Appellate Court of Illinois. It appears from this abstract that appellant filed suit for divorce in Illinois on March 22, 1945, on the grounds of cruelty and improper conduct on the part of Nathan Borin. It appears from the abstract that appellant alleged in her complaint that prior to May 1, 1943, she acquired stock ownership in Borin Art Products Corporation of 80 shares, or ten per cent of the outstanding stock. Other items in the abstract relate to alimony proceedings, contempt proceedings against Nathan Borin, and custody of the minor child of the parties. The abstract does not show the final disposition of the divorce action or the disposition or award of property. As above stated, appellant was finally divorced from Nathan Borin in March of 1949. It does not appear from the record what happened to the divorce action mentioned in the abstract. However, there was received in evidence copy of complaint for divorce, which apparently is a different divorce action from that mentioned above, an amended complaint for divorce, and second amended complaint for divorce. None of these complaints makes any mention of the Borin Art Products Company or the Borin Art Products Corporation. The district court refused to receive in evidence a decree entered in the last mentiond divorce action (Plaintiff's Exhibit No. 12 for identification), in which the court approved report of the master in chancery on evidence taken relating to appellant's petition for attorney's fees and suit money, on the ground that such document was immaterial and because it contained no mention of the corporation or the partnership. Efforts on the part of appellant to show the contents of the property settlement agreement entered into by the appellant and Nathan Borin were also rejected by the district court.

The partnership returns of income (Form 1065) for the period May 1, 1943, ending January 31, 1944; for the period February 1, 1944, ending January 31, 1945; for the period February 1, 1945, ending January 31, 1946; for the period February 1, 1946, ending January 31, 1947, and amended return for the last period February 1, 1946 to January 31, 1947, were received in evidence. The amounts shown for income tax reporting on behalf of appellant for the first return is $32,239.42; for the second return $46,028.35; for the third return $21,534.18; and for the fourth return appellant is listed as a retired limited partner, showing that at the beginning of the taxable year her capital account had been overdrawn in the sum of $11,-535.34, and at the end of the taxable year her capital account was overdrawn $11,740.47. In the amended partnership return for the period February 1, 1946 and ending January 31, 1947, appellant is again listed as a retired limited partner, showing her capital account had been overdrawn in the same amount of $11,740.47. None of these partnership returns was signed by appellant.

In connection with appellant's individual income tax return for the year 1944, the court found the appellant signed this return in blank and that the amounts thereon were inserted by parties unknown to the court. This return reported only one item of income, which was income from the partnership of Borin Art Products Company, in the amount of $32,239.42. Under date of December 4, 1947, appellant signed consent fixing period of limitation upon assessment of income and profits tax, in which appellant consented that the amount of any income tax, excess profits or war profits taxes due under any return made by her or on behalf of appellant for the taxable year ended December 31, 1944, could be assessed at any time on or before June 30, 1949. Each year thereafter appellant signed similar forms extending the period for assessment to June 30, 1955. The record is clear that the tax liability shown on the return of appellant for the year 1944 in the amount of $14,925.62 was paid by person or persons other than the appellant.

In connection with the appellant's individual income tax return for the year 1945, the district court found that appel-

lant's name was placed thereon by someone else without her knowledge. The court further found that appellant did not have knowledge of its contents, nor did she have knowledge of its filing at that time. Said return reported only one item of income, which was a distributable share in the amount of $46,-028.35 of the partnership income of Borin Art Products Company. The tax liability shown on said return was $26,-596.39. Under date of November 19, 1948, appellant signed consent fixing period of limitation upon assessment of income and profits tax, in which appellant consented that the amount of any income tax, excess profits or war profits taxes due under any return made by her or on behalf of appellant for the taxable year ended December 31, 1945, could be assessed at any time on or before June 30, 1950. Each year thereafter appellant signed similar forms extending the period for assessment to June 30, 1955. The record is clear that the tax liability shown on the return of appellant for the year 1945 in the amount of $26,596.39 was paid by person or persons other than the appellant.

Under date of June 3, 1948, the Treasury Department advised appellant that an examination of the income and excess profits tax returns for the year 1940 and 1941 filed by Borin Art Products Corporation disclosed deficiencies and penalties in income and profits taxes amounting to $80,019.10, and of these deficiencies $12,000 plus interest were proposed for assessment against appellant as transferee of the Borin Art Products Corporation.

Under date of April 21, 1955, the Treasury Department notified appellant that "the records of this office fail to disclose any pending action against Mrs. Claire Borin as transferee of the assets of Borin Art Products, Inc. for the years 1940 and 1941. The tax liability of Borin Art Products, Inc. for those years show payment in full by others than Mrs. Claire Borin."

Under date of March 30, 1950 the Treasury Department furnished to appellant a report of the examination of her income tax returns for the years 1944, 1945 and 1946. The letter transmitting the report, among other things, stated, "After consideration by this office, the following adjustments of your tax liability appear to be warranted, for the reason stated in the report:

| | Over-Assessment |
|---|---|
| 1944 income tax | $14,925.62 |
| 1945 income tax | 24,596.39 |
| 1946 income tax | 200.00" |

In the letter appellant was advised to execute the enclosed form of acceptance should she agree to the adjustment in order that a certificate of over-assessment could be issued. The report stated that the principal cause of change in tax liability of appellant was due to change in the partnership income. With respect to adjustments to net income of appellant for the year ended December 31, 1946, for which appellant filed no individual income tax return, the report states, "A report on the Borin Art Products Company submitted under even dates indicates a distribution of profits as reported to the above named taxpayer in the amount of $21,534.18. The distribution schedule as corrected has taxed Claire Borin's interest to her husband, Nathan Borin. Claire Borin has no other income or expenses. Forms C–71 indicate that neither the Bureau nor the Collector have any record of a return for Claire Borin for the year 1946."

On or about February 8, 1946, appellant executed and delivered a transferee agreement, in which appellant agreed that in consideration of the Commissioner not issuing statutory notice of deficiency to and making an assessment against Borin Art Products Corporation, appellant admitted that she was a transferee of the assets of Borin Art Products Corporation, and assumed and agreed to pay the amount of any and all federal income, excess profits, or profits taxes finally determined or adjudged as due and payable by the Borin Art Products Corporation for the taxable year ended

December 31, 1942, to the extent of her liability as transferee under the Internal Revenue Code. On or about the same day appellant executed and delivered another transferee agreement, similar in all respects to the foregoing, except that it covered the taxable period January 1, 1943 to April 30, 1943, of the Borin Art Products Corporation. On various dates, timely within the period of limitations, as extended, appellant executed "consents" fixing period of limitations upon assessment of liability at law or in equity for income or profits taxes against appellant as transferee in respect of any income, excess profits or war profits taxes imposed against or due from Borin Art Products Corporation, transferor, for the calendar year 1942 and for the period January 1, 1943 to April 30, 1943.

The latest of said consents extended said period of limitations to June 30, 1951.

The Commissioner of Internal Revenue made an assessment against Borin Art Products Corporation, of declared value excess profits tax and excess profits tax, penalties and interest, for the calendar year 1942 and for the period January 1, 1943 through April 30, 1943, in the amount of $110,334.07 and over-assessment in income tax in the amount of $2,046.98. No part of said assessment was paid by said corporation.

On or about March 19, 1951, appellant executed "Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment". Said form contained the following amounts and statements:

Deficiencies:
$ 9,746.78 for the year 1942
2,822.72 for the period January 1, 1943 to April 30, 1943

$12,569.50

Overassessment:
$ 1,490.02 for the year 1942
373.79 for the period January 1, 1943 to April 30, 1943

$ 1,863.81
"Represents undersigned's liability as a transferee of assets of Borin Art Products Corporation, Transferor, for income and excess profits taxes due from said Borin Art Products Corporation, Transferor."

---

On June 15, 1951, the Commissioner of Internal Revenue assessed against appellant, as transferee of the assets of Borin Art Products Corporation, deficiencies in taxes of said corporation in amounts as follows: Taxable period: Year 1942. Amount Assessed $11,177.24. Date of Assessment: June 15, 1951. Dates, Notice and Demands: June 25, 1951. Unpaid Balance: $11,177.24. Taxable Period: Jan. 1, 1943 thru Apr. 30, 1943. Amount Assessed: $3,588.89. Date of Assessment: June 15, 1951. Dates, Notice and Demands: June 26, 1951. Unpaid Balance: $3,588.89. The court found that no part of said unpaid balances had been paid.

Under date of June 1, 1953, appellant filed a claim for refund of income taxes paid for the year 1944 in the amount of $14,925.62. The reasons set forth in the claim are as follows: "The income on which claimant paid income taxes in the amount of $14,925.62 for the taxable year 1944 consisted of $32,239.42 attributed to claimant as a limited partner in the Borin Art Products Co., 1325 S. Cicero Avenue, Cicero, Illinois. Claimant was not, during the taxable year 1944 or at any other time, a bona fide limited partner in said firm but was merely so designated for tax purposes by her then husband, Nathan Borin, and never in fact received the income at-

tributed to and reported by her at the said Borin's direction. Claimant had no taxable income from any source for the taxable year 1944 and is, accordingly, entitled to a refund of taxes paid in the amount of $14,925.62, as set forth in Revenue Agent's Report dated January 20, 1950, appended to letter received by claimant from E. C. Wright, Internal Revenue Agent in Charge, under date of March 30, 1950, which letter proposed an overassessment in claimant's favor in said amount for the taxable year 1944. A photostatic copy of said letter proposal and appended agent's report is hereto attached." In fact, three such claims were filed for the years and in the amounts shown in the letter from the Treasury Department, dated March 30, 1950, and above mentioned, and all three claims were filed at the same time.

The district court found: On April 30, 1943, said Borin Art Products Corporation was dissolved and on or about said date all of the assets of said corporation were transferred to a partnership, Borin Art Products Company; upon dissolution of the corporation, said corporation was and is without property or things of value; prior to the dissolution of said corporation appellant was the owner of 80 shares of stock of the corporation; under the partnership agreement appellant, as one of the limited partners named therein, received a ten per cent interest in said partnership of an agreed value of $12,000, as set forth in said agreement; upon dissolution of the corporation appellant did not receive directly any of the money, property or assets of said corporation, but received for her interest of 80 shares in said corporation the ten per cent interest in the partnership; during the period May 1, 1943 to termination of said partnership, no part of the moneys, property, or other assets belonging to the partnership was distributed to appellant, nor did she withdraw any part of her distributable share of her income as a partner of said part-

nership; the partnership agreement was not personally signed by appellant, nor did she authorize anyone to sign it for her at the time of its execution.

The record is clear that appellant was a person of no business experience and knew nothing of the affairs of the corporation or the partnership. The record is also clear that the various documents, agreements, extensions and waivers pertaining to tax liability were signed by appellant in blank, and the contents filled in by persons or accountants acting on her behalf, and that she was unaware of their contents. Appellant testified she never was the owner of any shares of stock in the corporation; that she never signed the partnership agreement, knew nothing about it, and that the allegations contained in the complaint in chancery for dissolution of the partnership and the allegations contained in the divorce action, as reflected in the abstract of record, were prepared by appellant's counsel based upon documents found by appellant and turned over to counsel without knowledge on the part of appellant as to the contents thereof. The signature of appellant to the partnership agreement was a forgery, and so regarded by the district court. In this connection, a witness on behalf of appellant, who qualified as an examiner of questioned documents and a handwriting expert testified that the "Claire Borin signature on Exhibit 1 [partnership agreement] is an imitation of the genuine handwriting of Claire Borin * * * It is an attempt to copy a signature. It is not like the one on the income tax return [individual tax return for the year 1945, above mentioned] which shows no resemblance to her signature at all, but this signature does have some resemblance to the genuine handwriting."

That the district court regarded the signature to the partnership agreement as a forgery, and was satisfied that appellant was without business experience, and knew nothing of the contents of the various documents, and signed documents in blank, was without knowledge of the

affairs of the corporation or the dissolution thereof and the transfer to the partnership, and received no benefit from the various transactions, are clearly reflected at various places in the record, where the trial court stated:

"I would not find that the plaintiff in this action was bound by the partnership agreement under the evidence before me unless it had been for her actions after the date of the agreement. * * *

"I will further find she did not sign the so-called partnership agreement or did not authorize anybody to sign it for her, but that subsequent to the signing of the partnership agreement she recognized the partnership agreement, and became obligated thereunder.

"It seems to me that Mrs. Borin is now estopped from denying the partnership, although if it hadn't been for her subsequent acts and conduct, I would feel she was not liable, but I am basing my opinion purely on the actions of Mrs. Borin. * * *

"The Court: I feel sorry for Mrs. Borin because I don't think she knew what was going on. I am satisfied that she signed a lot of papers in blank for her accountant or for her attorney, but anybody that signs an application or a paper in blank can't later be heard to complain that she is not responsible.

"I would like the findings to contain the express finding that I am finding Mrs. Borin liable because of her conduct subsequent to the first day of May, 1943. I think because of her conduct she is now estopped from denying that there was a partnership. * * *

"You agree with me, do you not, even though one does not sign a contract, nevertheless he can be bound under the contract because of his subsequent acts?

"Mr. Harpole [counsel for appellee]: If he accepts the benefits, I think so, yes.

"The Court: Don't predicate it upon accepting the benefits, because I am going to find she didn't get any benefits. * * *

"The Court: I found specifically she hadn't signed that partnership agreement. * * * I am predicating my judgment upon one theory only, and I wish it to go up on that theory. * * * That is, here was a partnership agreement that she didn't sign. * * * She didn't get anything under the partnership agreement except a claim she possibly could have collected upon. * * * However, afterwards she set up that there was a partnership agreement, that she was a partner, and she brought an action to terminate the partnership agreement and for an accounting. Now I say she was estopped from denying the partnership. * * *

"I am satisfied * * * that Mr. Borin treated his partnership as his own business. He didn't ask his wife anything about it. He didn't pay her any dividends. He didn't give her anything.

"This court is satisfied that she [appellant] doesn't know anything about business practices."

As conclusions of law, the court concluded: "The defendant has not sustained her burden of proving that she is not liable, at law or in equity, as transferee of the assets of Borin Art Products Corporation, for deficiencies in taxes assessed against said Corporation.

"By her actions subsequent to May 1, 1943, the date of execution of the partnership agreement which created the partnership of Borin Art Products Company, defendant recognized, ratified and adopted said partnership agreement and thereby became obligated thereunder as fully as though she had personally placed

her signature thereon at the time of its execution.

"The liability of defendant as transferee of the assets of Borin Art Products Corporation is limited to $12,000.00, the agreed value of her interest in the partnership, Borin Art Products Company.

"The intervener, United States of America, is entitled to judgment against defendant, Claire B. Morse, in the assessed amount of $10,705.69, with interest thereon at six per cent (6%) per annum from May 1, 1943, but limited to a total not to exceed $12,000.00."

The appellant seeks reversal of judgment of the district court on several grounds, including alleged errors of the trial court respecting the burden of proof, the implied finding that Borin Art Products Company was a bona fide partnership instead of a sham and the alter ego of Nathan Borin, in failing to find the actual value of appellant's interest in the corporation, in finding that appellant rather than the partnership was the transferee of the corporation, and in concluding that appellant, "by her actions subsequent to May 1, 1943, the date of execution of the partnership agreement which created the partnership of Borin Art Products Company, defendant recognized, ratified and adopted said partnership agreement and thereby became obligated thereunder as fully as though she had personally placed her signature thereon at the time of its execution."

We have reached the conclusion that the only ground which we need to consider on this appeal relates to the finding of fact and conclusion of law wherein the trial court found and concluded that appellant by her actions "recognized, ratified and adopted said partnership agreement and thereby became obligated thereunder as fully as though she had personally placed her signature thereon at the time of its execution."

 The parties concede that whether a transferee is liable, at law or in equi-

ty, is to be determined by state law. Commissioner v. Stern, 357 U.S. 39, 78 S.Ct. 1047, 2 L.Ed.2d 1126; United States v. Bess, 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135; United States v. Truax, 5 Cir., 223 F.2d 229. The state law of Illinois is applicable here since the transferor was an Illinois corporation located there, the assets of the corporation were transferred in Illinois to a partnership created there, and the parties to the partnership agreement resided there. The law of the State of Illinois appears to be well settled that a party who alleges, asserts or relies on a ratification of an unauthorized act of an agent must show that the principal intended to ratify and at the time of ratification had full knowledge of all of the material facts connected with the transaction. Scharf v. Solomon, 297 Ill.App. 155, 17 N.E.2d 240, 242. In that case the court stated: "In the case of the Farmers National Bank v. Trautwein, 228 Ill.App. 356, it is said: 'It is a well-settled rule that knowledge of the terms and conditions of an unauthorized contract entered into by an agent is not to be presumed from the fact that the principal had a reasonable opportunity to acquire such knowledge. * * * "A principal's ratification of an agent's unauthorized act must be clearly shown, either directly or impliedly, from clear and unequivocal circumstances." In order to bind a principal by ratification, assent or acquiescence in prior acts of his agent in excess of authority actually given, a knowledge of the material facts must be brought home to him. He must have been in possession of all of the facts and must have acted in the light of such knowledge. 21 R.C.L. 928; Coleman v. Connolly, 242 Ill. 574–583, (90 N.E. 278, 134 Am.St.Rep. 347); Cadwell v. Meek, 17 Ill. 220–227.'

"As said by Justice Story, in the case of Owings v. Hull, 9 Pet. 607, 629, 9 L. Ed. 246: 'No doctrine is better settled, both upon principle and authority, than this—that the ratification of an act of an agent previously unauthorized, must, in order to bind the principal, be with a full

knowledge of all the material facts. If the material facts be either suppressed or unknown, the ratification is treated as invalid, because founded in mistake or fraud.'"

In Fay v. Slaughter, 194 Ill. 157, 62 N. E. 592, 596, 56 L.R.A. 564, the Supreme Court of Illinois said: "* * * the above authorities are to the effect that when a forgery is committed there can be no pretense of authority, and, as is said in Henry v. Heeb [114 Ind. 275, 16 N.E. 606], supra: 'It is difficult to understand how one who is, in a sense, the victim of the criminal act, may adopt or ratify it.' By the decisions of this state he might do so, but he would only be held to do so when it was shown that with a full knowledge of all the material facts he did ratify it. Livings v. Wiler, 32 Ill. 387; Hefner v. Vandolah, 57 Ill. 520; Chicago Edison Co. v. Fay, 164 Ill. 323, 45 N.E. 534. * * * In the absence of express ratification, leaving aside the equitable view of it, he could not be deemed, in law, by implication, to have ratified the acts of Anderson [agent], unless with a knowledge of its source, and the material facts relating to the manner in which it came into his bank account were brought home to him, and then, with that knowledge, appropriated the money, or part of it, to his use. * * * In this record there is no evidence showing, or tending to show that plaintiff in error got the real benefit of any of this money, either by checking it out for his own use or by its being checked and applied to his business."

■■ Appellee contends that appellant recognized and ratified the partnership agreement in her verified complaint for dissolution of the partnership and an accounting. We disagree. The facts which we have heretofore outlined clearly show that appellant had no knowledge of the material facts; she simply turned over to her attorneys documents which she found, without knowledge on her part as to their contents, and the attorneys prepared the complaint. Her signature to the partnership agreement was a forgery of which she had no knowledge until several years later. She received no benefits from the law suit. She received no benefits from the corporation or from the partnership. The appellee sustained no detriment, suffered no change of position, and was in no wise adversely affected by any of appellant's conduct subsequent to the execution of the partnership agreement, resulting from any agreements, extensions, or claims executed by appellant. We hold under the facts of this case that appellant by her conduct subsequent to the partnership agreement did not ratify or adopt or become obligated under the partnership agreement.

Appellee relies heavily on the doctrine enunciated by this Court in Maletis v. United States, 9 Cir., 200 F.2d 97, certiorari denied 345 U.S. 924, 73 S.Ct. 782, 97 L.Ed. 1356. Appellee contends that under such doctrine the appellant cannot repudiate the partnership. In that case the court stated at page 98: "The general rule has often been stated: 'The taxpayer may not escape the tax consequences of a business arrangement which he made upon the asserted ground that the arrangement was fictional.' Love v. United States, 96 F.Supp. 919, 921, 119 Ct.Cl. 384, 394.

"'A taxpayer is free to adopt such organization for his affairs as he may choose and having elected to do some business as a corporation, he must accept the tax disadvantages.' Higgins v. Smith, 308 U.S. 473, 477, 60 S.Ct. 355, 358, 84 L.Ed. 406."

In our view, the rule enunciated cannot be applied to the facts of this case. Certainly appellant did not create the partnership. Her signature thereto was forged. She had no knowledge of the creation of the partnership or of its affairs. Undoubtedly the doctrine announced would apply if Nathan Borin instead of appellant were a party to this action.

The judgment of the district court must be and is reversed.